John HALL *v.* Charles RAGLAND, Commissioner of Revenues et al

81-260                                                     635 S.W.2d 228

Supreme Court of Arkansas
Opinion delivered June 21, 1982

*Harmon & Honeycutt,* for appellant.

*James Eads, Jr.* and *Wayne Zakrzewski,* Revenue Division, Department of Finance and Administration, for appellee Charles Ragland.

*Wallace, Hilburn, Clayton, Calhoon & Forster, Ltd.,* by: *Larry C. Wallace* and *Joseph H. Purvis,* for appellees City of North Little Rock and City of Mountain Home.

GEORGE ROSE SMITH, Justice. In this taxpayer's suit for a declaratory judgment the appellant challenges the constitutionality of Acts 133 and 861 of 1981, under which North Little Rock and a few other municipalities have voted to levy a 1% local sales tax. Ark. Stat. Ann. §§ 19-4513 *et seq.* (Repl. 1980 and Supp. 1981). The appellant contends that the 1981 acts are void because they extend the provisions of a prior act by reference to its title only, in violation of Article 5, § 23, of the Constitution, and because they are local acts, in violation of amendment 14. The chancellor upheld the validity of the 1981 legislation.

The basic statute authorizing the levy of a municipal sales tax was Act 990 of 1975. Section 1 (a) of that act

restricted its operation to cities having a population of more than 30,000 and being located in a border county, which limited the application of the law to Fort Smith and Fayetteville. In other respects Act 990 was a comprehensive statute providing for a local election to approve the levy, for the collection of the tax by the Commissioner of Revenues, for its distribution to the cities through the state treasury, and for other administrative details. Act 990 was amended in 1977 and 1979 to extend its provisions to a few other cities.

In 1981 the legislature adopted Act 133, amending Act 990 to include all cities of the first class, and then adopted Act 861, further amending Act 990 to include all cities and incorporated towns. We need quote only Act 861, which is entitled: "An Act to Amend Sections 1 and 2 of Act 990 of 1975, as Amended (Ark. Stats. 19-4513 and 19-4514); and for Other Purposes." The rest of Act 861 provides:

SECTION 1. Section 1 of Act 990 of 1975, as amended, the same being Arkansas Statute 19-4513, is hereby amended to read as follows:
"Section 1. The following words shall have the following meanings unless a different meaning clearly appears from the context:
(a) The term 'City' shall mean any city of the first class, city of the second class, or incorporated town.
(b) The term 'Commissioner' means and refers to the Commissioner of Revenues of the State of Arkansas, or any of his duly authorized agents."
SECTION 2. Section 2 of Act 990 of 1975, as amended, the same being Arkansas Statute 19-4514, is hereby amended by adding subsection (j) as follows:
"(j) Any city may provide in its ordinance authorized by this Act for a rebate from the city for taxes in excess of twenty-five dollars ($25.00) paid to the city on a single transaction."
SECTION 3. It is hereby found and declared by the General Assembly that there is a great need for immediate improvement of municipal services and a stable source of revenue to finance such vital local government services. Therefore, an emergency is hereby declared to exist and this Act being immediately

necessary for the protection of the public peace, health and safety shall take effect and be in full force immediately on its passage and approval.

We first turn to the argument that Act 861 is contrary to Article 5, § 23, which reads: "No law shall be revived, amended, or the provisions thereof extended or conferred by reference to its title only; but so much thereof as is revised, amended, extended or conferred shall be reenacted and published at length." Here the question is whether Act 861 improperly amended Act 990 or improperly extended its provisions, the references to "revive" and "confer" not being pertinent.

The language of the 1874 constitution was derived from a similar Article 5, § 23, of the 1868 constitution. In an early case we said that the object of the constitutional provision was "to prevent that system of amendments, which, instead of inserting the amendment or alteration, together with so much of the old law as was retained, provided . . . that a given law should be amended as follows, to wit: in a given section or line, strike out given words and insert others, leaving the court, by this direction, to make the amendment itself and make a new law out of the two." *Palmore* v. *State*, 29 Ark. 248 (1874), followed in *Perkins* v. *DuVal*, 31 Ark. 236 (1876). After the adoption of the 1874 constitution we adhered to the view expressed in *Perkins*. *Scales* v. *State*, 47 Ark. 476, 1 S.W. 769, 58 Am. Rep. 768 (1886).

In actuality we have seldom encountered statutes attempting to amend earlier acts by merely substituting one word or phrase for another, the procedure condemned in *Palmore*. Such an instance did arise in *Rider* v. *State*, 132 Ark. 27, 200 S.W. 275 (1918), where the amending statute merely provided that wherever Act 310 of 1909 read "Charleston District of Franklin County" it was amended to read "Charleston District of Franklin County and Barham and Wittich Townships of Franklin County." We held the amending statute to be in violation of the Constitution.

In other contexts, however, we have in about twenty-five cases passed on the validity of statutes that were said not

to have complied with the requirement in the Constitution that "so much [of the earlier statute] as is revived, amended, extended or conferred shall be reenacted and published at length." We find it impossible to completely harmonize all the language in our earlier cases. Some of our holdings simply conflict with others. We cannot conscientiously decide the present case without recognizing those conflicts and following what we think to be the better rule.

We are sure that the intent of the Constitution was misconstrued, twelve years after its adoption, in *Watkins* v. *Eureka Springs*, 49 Ark. 131, 4 S.W. 384 (1886). There one section of an act provided that "the law now in force governing in cases where counties are authorized to call in their floating indebtedness, shall apply and govern in proceedings had by counties, cities or incorporated towns." Although the act in question did not *expressly* purport to amend *any* earlier statute, we held it to be invalid because it did not re-enact the act authorizing counties to call in the evidence of their indebtedness. This language in the opinion is no longer law:

> But can the operation of the provision [applicable to counties] be *extended* or the power given by it *conferred* upon cities, by a general reference to the former law? We apprehend that it was just this sort of blind legislation the Constitution intends to prohibit when it says the provisions of a law shall not be "extended or conferred" without "re-enacting" the part "extended" or "conferred." It may be that no legislator was misled by this act or failed to perceive all that it was desired it should accomplish. Of that we have no means of judging. It is sufficient that the Constitution renders such an effort at legislation unavailing.

The error in the *Watkins* case was effectively corrected in 1915, but we neglected to overrule or even cite *Watkins.* *State* v. *McKinley*, 120 Ark. 165, 179 S.W. 181 (1915). In *McKinley* we recognized the validity of "reference statutes," such as the one invalidated in *Watkins,* by approving this language in an Alabama opinion:

There is a class of statutes, known as "reference statutes," which impinge upon no constitutional limitation. They are statutes in form original, and in themselves intelligible and complete — "statutes which refer to, and by reference adopt, wholly or partially, pre-existing statutes. In the construction of such statutes, the statute referred to is treated and considered as if it were incorporated into and formed a part of that which makes the reference. The two statutes coexist as separate and distinct legislative enactments, each having its appointed sphere of action; and the alteration, change, or repeal of the one does not operate upon or affect the other." *Phoenix Assurance Co.* v. *Fire Department,* 117 Ala. 631, 23 So. 843, 42 L.R.A. 468. Such statutes are not strictly amendatory or revisory in character, and are not obnoxious to the constitutional provision which forbids a law to be revised, amended, or the provisions thereof to be extended or conferred by reference to its title only. That prohibition is directed against the practice of amending or revising laws by additions, or other alterations, which without the presence of the original act are usually unintelligible.

The *Watkins* opinion contained another misleading statement, that the constitutional provision now before us was meant "to lay a restraint upon legislation where the bill was presented in such form that the legislator could not determine what its provisions were from an inspection of it." That overbroad statement was quoted, albeit harmlessly, as recently as 1968 in *City of Manila* v. *Downing,* 244 Ark. 442, 425 S.W.2d 528.

The constitutional provision in question relates to the situation in which the legislature is passing a bill for the purpose of modifying in some way a certain previous law. In that situation it is hardly possible for the amending act to be drawn in such a way as to explain its full effect without any legislator having to look at the act being modified. That point was made clear in *Scales* v. *State, supra,* when we said:

It is well settled that this provision does not make it necessary, when a new statute is passed, that all prior laws modified, affected or repealed by implication should be re-enacted. If we should so hold a large part of the laws of this state would have to be re-enacted and republished at every session of the legislature, and some of them many times over. . . . To make the provision mean that would be an absurd construction.

To illustrate the point, Act 57 of 1981, now compiled as Ark. Stat. Ann. § 19-2203, was entitled: "An Act to Amend Section 3 of Act 491 of 1921; and for Other Purposes." It might have been better if the title had indicated the nature of the proposed amendment, but there is no such constitutional requirement. The act itself contains only one section, which amends a section in the earlier act "to read as follows." The section is long, more than a printed page. No legislator or anyone else could determine the changes made by the new act without comparing it word for word with the 1921 act being amended. But Act 57 complied strictly with the Constitution by re-enacting and publishing at length that part of the earlier act being changed. The constitutionality of Act 57, as far as Article 5, § 23, is concerned, cannot be doubted. There are scores of similar amendatory statutes now in force, all of which would be imperiled if we adopted the literal meaning of the language in the *Watkins* opinion.

It is plain enough that there is no requirement that an amendatory statute be so self-sufficient that no examination of the act being amended is needed for a complete understanding of the changes being made. On the other hand, we recognize the possibility that a legislative bill might contain a "re-enactment" of so few words in a prior statute as to fall within the prohibition in *Palmore* v. *State*, where we condemned the mere substitution of one word for another.

That impermissible brevity, however, is not to be found in the statute under attack, Act 861, which we have quoted in full. It re-enacts in full the definition of the term "city," which is being changed. It adds a new subsection (j) to Section 2 of Act 990, permitting a city to authorize a rebate of

taxes in excess of $25 paid in a single transaction. Furthermore, the act contains an emergency clause referring to the immediate need for a stable source of revenue to finance an improvement in needed municipal services. An emergency clause has been considered in determining the validity of a statute in a case of this kind. *Hollis & Co.* v. *McCarroll*, 200 Ark. 523, 140 S.W.2d 420 (1940). It cannot be said that Act 861 contained such a marked lack of information as to amount to a violation of the Constitution.

In reaching this conclusion we have carefully studied the case of *Texarkana-Forest Park etc. Dist. No. 1* v. *State Use Miller County*, 189 Ark. 617, 74 S.W.2d 784 (1934), cited by the appellant. That case had its remote origin in Act 126 of 1923, a complete and comprehensive act authorizing the creation of suburban improvement districts for various purposes, including the construction of streets, roads, waterworks systems, gas pipe lines, sewer systems, and other improvements. Section 24 of the act limited its application to counties having more than 75,000 inhabitants. By Act 183 of 1927 the legislature amended Act 126 to make it applicable to all counties. Act 183 repealed Section 24 of the earlier act and added several other sections designed to increase the scope of the original law, such as a section permitting a suburban improvement district to include land in two or more counties and a section reducing from 10,000 to 6,000 the minimum population of those cities near which a suburban improvement district could be formed.

In the *Texarkana* case the court, in a 4-3 decision, held that Act 183 of 1927, the amending act, violated Article 5, § 23, of the Constitution. The court first relied on the *Watkins* case, *supra*, which, as we have seen, had in effect been overruled by *State* v. *McKinley*, *supra*. The opinion then copied eight additional citations from *Farris* v. *Wright*, 158 Ark. 519, 250 S.W. 889 (1923), but for the most part those cases were actually contrary to the *Texarkana* holding and had been cited in *Farris* for a quite different reason. The court rested its final conclusion squarely on *Rider* v. *State*, *supra*, saying that in *Rider* "we had before us, in effect, the exact question here presented." In *Rider*, however, the amending statute had merely substituted for the words

"Charleston District of Franklin County," wherever they appeared in the statute being amended, the words "Charleston District of Franklin County and Barham and Wittich Townships of Franklin County." Thus the *Rider* case merely applied the basic principle announced in *Palmore* v. *State, supra,* and was certainly not a basis for the holding in the *Texarkana* case. In fact, the *Texarkana* decision stands alone during the past sixty years or more in its holding that an amending statute which adds sections to a previous act must also re-enact the earlier statute in its entirety. Such a rule would invalidate hundreds and perhaps even thousands of amendatory statutes that have actually complied strictly with the constitutional requirement that the amended provisions be re-enacted. We have no hesitancy in overruling the *Texarkana* case.

The appellant's second point, that Act 861 is a local act, does not require extended discussion. The chancellor held that Act 990 was not local even though it applied only to Fort Smith and Fayetteville. We do not reach that issue, because the effect of Act 861 was to convert Act 990 into a general law, applicable alike to all cities and towns throughout the state. Ordinarily, the legislature cannot amend a local act, *Johnson* v. *Simpson,* 185 Ark. 1074, 51 S.W.2d 233 (1932), but that is because the amending act is itself a local act. Here, however, the amending act made Act 990 a general law. The legislature could have reached precisely the same result by re-enacting Act 990 in its entirety, with the broader definition of a city — a consideration that is not applicable to most amendments of local acts. Consequently there was no violation of the principle that generally prevents the passage or the amendment of a local act. This point of distinction was completely overlooked in the opinion on rehearing in the *Texarkana* case, where the court merely stated the general rule that a local act cannot be amended.

Affirmed.

HICKMAN and PURTLE, JJ., dissent.

DARRELL HICKMAN, Justice, dissenting. Rather than determine whether our cases are inconsistent, I have tried to

determine whether they are consistent. Rather than see if the constitution and our cases can condone this legislation, I have sought to determine if this legislation complies with the constitution and the principles of law set forth in our cases. In doing so, I would reach an opposite result because there is a common theme that runs throughout our cases; that is, whether the amendatory legislation can stand alone on its face and notify any legislator of its purpose.

The intent of Article 5, § 23 of the constitution is to insure that members of the General Assembly are given fair notice of the effect of an amended act. Of course, that principle may not have always been consistently applied since no two pieces of legislation are the same and, therefore, our cases are not all alike. But our approach has been consistent. And that is to make certain Article 5, § 23 has some force and effect.

In *Watkins* v. *Eureka Springs,* 49 Ark. 131, 4 S.W. 384 (1886), we held a proposed amendment invalid because it was "blind legislation." Regarding Article 5, § 23 we said:

> They [The framers of the Constitution] meant only to lay a restraint upon legislation where the bill was presented in such form that the legislator could not determine what its provisions were from an inspection of it. . . . The language of the provision is so broad that a liberal construction would hamper legislation, almost to the extent of prohibiting it.

The majority interprets *State* v. *McKinley,* 120 Ark. 165, 179 S.W. 181 (1915) as overruling *Watkins, supra.* In *McKinley* we did quote with approval language from an Alabama decision. But that language is consistent with our posture — the amendment must be intelligible and be able to exist separately; it cannot be unintelligible. We said in *McKinley*:

> The purpose of the clause of the Constitution was to protect the members of the Legislature and the public against fraud and deception.

> Where the new act is not complete but refers to a

prior statute which is changed so that the legislative intent on the subject can only be ascertained by reading both statutes, uncertainty and confusion will exist and this constitutes the vice sought to be prohibited by this clause of the Constitution.

Regarding the Act in question we said:

In the case before us, the act is very broad and comprehensive. It is complete in itself and in no manner attempts to amend or change the existing election laws.

In *McKinley* we also quoted from a Michigan case, *People* v. *Mahaney*, 13 Mich. 481, which said:

The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws.

In *City of Manila* v. *Downing*, 244 Ark. 442, 425 S.W.2d 528 (1968), we said that Article 5, § 23 " . . . was intended to prohibit legislation drafted in such form that the legislators could not determine what its provisions were from an inspection of it. . . . " We upheld the act in question, Act 124 of 1961, for the reason that it did "not contain any meaning that was not apparent on the face of the Act." In *Texarkana-Forest Park Dist. No. 1* v. *State Use Miller County*, 189 Ark. 617, 74 S.W.2d 784 (1934), we did not construe Article 5, § 23 as strictly as we had in other cases, but it was and is the law and has not since been questioned. It emphatically holds that a local act cannot be amended, even though the local act is made general in its application by the amendment. Evidently that principle is also overruled.

Our position heretofore was fairly summarized in Anderson, *Drafting a Legislative Act in Arkansas*, 2 ARK. L. REV. 382 (1948):

The Arkansas Supreme Court, however, has adopted a rather restricted construction which does not impose unreasonably severe limitations upon the amendment process. The purpose of the provision is said to bé the *prevention of amendatory acts that are not complete in themselves and which, for that reason, cannot be intelligently considered by the legislature without reference to the text of the earlier act.* [Emphasis added.]

I find no inconsistency in principle in these cases.

Does Act 861 meet our test? Is it complete in itself? Or does the original text have to be referred to? The trial court made a finding that the original act had to be referred to to understand the proposed amendment, and it was undisputably right in that regard. There is no way any legislator, citizen, lawyer or judge could say this legislation on its face authorized cities and towns to enact a one cent sales tax. That information is simply not there; therefore, the legislation fails our test.

The majority raises the specter of thousands of other acts being also illegal. Whether other such unconstitutional legislation exists is, of course, irrelevant. It is not within our province to tell the legislature how to conduct their business; our purpose is to interpret and enforce the constitution. Thousands of local acts have been passed in violation of amendment 14. As everyone knows, including the legislators themselves, the local acts are nonetheless illegal. Actually, Article 5, § 23 is primarily for the benefit of the General Assembly; members should only be accountable for their vote on that which is legally and intelligibly before them.

How could Act 861 have been made constitutional? In several ways. Simply by providing its purpose on its face, exactly as another act that passed the same session did. That legislation, Act 991 of 1981, authorized counties to enact a sales tax. Its title provides: "AN ACT to Authorize Counties to Levy a One Percent (1%) Sales Tax; Requiring an Election on the Issue; and for Other Purposes." Is it too much to ask

that just such information appear somewhere in the amended Act? No doubt, because of the title of Act 991, all legislators were on notice as to what the legislation was; just as surely the legislators could not know that Act 861 was authorizing cities to levy a one cent sales tax. Another way Act 861 could have been made constitutional is by providing in any section, including the emergency clause, that a one cent sales tax was being authorized. The amended legislation could also have been recited in full, leaving no doubt as to the meaning of the amendment. In my judgment any of these methods could have made Act 861 constitutional.

The precedent set by the majority will uphold the constitutionality of amendatory legislation regardless of its content and the notice it gives to legislators, if the amended act is referred to and the amendment is set forth in full.

Rather than adopting a better rule, we are diluting the constitutional provision in question and abandoning an important principle of law consistent in our cases. Rather than overrule any cases and emasculate an article of the constitution, I would declare the act void.

Since I would void the legislation because it violated Article 5, § 23, I would not reach the question of local legislation. If I did, I would not treat it so gently.

PURTLE, J., joins in this dissent.

JOHN I. PURTLE, Justice, dissenting. I fully agree with Justice Hickman's dissent; however, for my own peace of mind, I would like to add a few words. Article 5, § 23, Constitution of Arkansas, reads as follows:

No law shall be revived, amended, or the provisions thereof extended or conferred by reference to its title only; but so much thereof as is revived, amended, extended or conferred shall be reenacted and published at length.

Act 861 of 1981 reads as follows:

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1. Section 1 of Act 990 of 1975, as amended, the same being Arkansas Statute 19-4513, is hereby amended to read as follows:

"Section 1. The following words shall have the following meanings unless a different meaning clearly appears from the context:

(a) The term "City" shall mean any city of the first class, city of the second class, or incorporated town.

(b) The term "Commissioner" means and refers to the Commissioner of Revenues of the State of Arkansas, or any of his duly authorized agents."

SECTION 2. Section 2 of Act 990 of 1975, as amended, the same being Arkansas Statute 19-4514, is hereby amended by adding subsection (j) as follows:

"(j) Any city may provide in its ordinance authorized by this Act for a rebate from the city for taxes in excess of twenty-five dollars ($25.00) paid to the city on a single transaction."

SECTION 3. . . . (Emergency Clause.)

In my opinion, the General Assembly runs a serious risk of having legislation declared unconstitutional unless they abide by the provisions of Article 5, § 23 as set out above. Until the foregoing constitutional provision is repealed or amended by the people of the state of Arkansas, I shall continue to insist that its provisions be strictly complied with.