CITY OF LITTLE ROCK, et al. *v.*
Jamie D. WATERS, et al.

90-127                                    797 S.W.2d 426

Supreme Court of Arkansas
Opinion delivered October 15, 1990
[Rehearing denied November 19, 1990.*]

*Dudley and Turner, JJ., not participating.

*Mark Stodola*, City Attorney, by: *Thomas M. Carpenter*, Asst. City Att'y, for appellant.

*Jack, Lyon & Jones, P.A.*, by: *Eugene G. Sayre*, for appellee.

SPECIAL JUSTICE STANLEY D. RAULS. This is an appeal from an order of the Chancery Court of Pulaski County ruling that the "local compensating use tax" (use tax) imposed by Act 31 of the

First Extraordinary Session of 1987 (Act 31) violates the equal protection clauses of both the United States and Arkansas Constitutions.

The appellants, City of Little Rock, et al. (City), allege two points of error for reversal: (1) that an act of the General Assembly, which imposes a use tax by operation of law, does not violate the equal protection clause of either the United States or the Arkansas Constitutions, and (2) that there is no basis in the record to support the Chancellor's ruling that Act 31 is unconstitutional. We agree with the City's arguments and reverse and remand.

There are several tax statutes in effect in Arkansas which pertain to sales and use taxes. Of primary importance to this appeal are four acts:

1. Act 991 of 1981, *as amended by* Act 26 of the First Extraordinary Session of 1981 (codified at Ark. Code Ann. § 26-74-301 to -317 (1987))—a one percent countywide sales tax;

2. Act 26 of the First Extraordinary Session of 1981 (codified at Ark. Code Ann. § 26-74-201 to -221 (1987))—a one percent countywide sales and use tax;

3. Act 827 of 1987 (repealed); and

4. Act 31, *supra* (codified at Ark. Code Ann. § 26-74-319 (1989))

Both Act 991 and Act 26 represent enabling legislation that permits the counties, by referendum, to impose taxes upon their residents. By Act 991, the Arkansas Legislature authorized counties to call an election for the levy of a one percent sales tax. The imposition of that sales tax by county ordinance requires the positive vote of a majority of the qualified electors in the county at an election called for that purpose. Under section 3, the ballot is to be substantially in the following form:

[ ] "FOR adoption of a one percent (1%) sales tax within (Name of county)"

[ ] "AGAINST adoption of a one percent (1%) sales tax within (Name of county)"

Act 26 authorizes counties, again by election, to impose a sale *and* a use tax. Under section 3 of this act, the ballot is to be substantially in the following form:

[ ] "FOR adoption of a one percent (1 %) sales and use tax within (Name of county)"

[ ] "AGAINST adoption of a one percent (1 %) sales and use tax within (Name of county)"

Act 26, section 17 further provides:

In all counties which have, prior to the effective date of this Act [December 1, 1981], adopted a local sales tax under Act 991 of 1981, there is also hereby levied a local compensating (use) tax which shall in all respects be administered and enforced in accordance with the provisions of Act 991 of 1981 and the ordinance levying the local sales tax.

By special election held on February 2, 1982, Pulaski County voters approved the imposition of a sales tax. Although the official ballot and voting instructions called for a vote upon the imposition of a tax under Act 991 as amended by Act 26, the ballot contained the wording from section 3 of Act 991 and made no mention of a use tax. By county ordinance adopted on March 23, 1982, the Pulaski County Quorum Court attempted to levy a complementary use tax. A class action filed by taxpayers of Pulaski County resulted in a ruling by this Court which held that a county may not impose a use tax without an election held specifically for that purpose. *Ragan* v. *Venhaus*, 289 Ark. 266, 711 S.W.2d 467 (1986).

On April 8, 1987, the governor signed Act 827 of 1987, which had been unanimously approved by the General Assembly. That act provided:

SECTION 1. In all counties which have, prior to the effective date of this Act, adopted a local sales tax under the provisions of Act 991 of 1981, or Act 26 of the First Extraordinary Session of 1981, there is also hereby levied a local compensating use tax. In those counties which have previously adopted a local sales tax under the provisions of Act 991 of 1981, the local compensating use tax levied

herein shall in all respects be administered and enforced in accordance with the provisions of Act 991 of 1981. In those counties which have previously adopted a local sales tax pursuant to Act 26 of the First Extraordinary Session of 1981, the local compensating use tax levied herein shall in all respects be administered and enforced in accordance with the provisions of Act 26 of the First Extraordinary Session of 1981.

SECTION 2. All laws and parts of laws in conflict with this Act are hereby repealed.

The cause of action in this case originated on May 14, 1987, with a complaint for declaratory judgment filed by the Arkansas Commissioner of Revenue (Commissioner). The Commissioner requested a determination regarding the validity of Act 827 of 1987 which, on June 12, 1987, was repealed by Act 31. In addition to repealing the prior act, Act 31 stated:

SECTION 1. In all counties which adopt a local sales tax under the provisions of Act 991 of 1981 or Act 26 of the First Extraordinary Session of 1981 or which have, prior to the effective date of this act [September 4, 1987], adopted a local sales tax under the provisions of Act 991 of 1981, or Act 26 of the First Extraordinary Session of 1981, there is also hereby levied a local compensating use tax. The rate of use tax levied by this Act shall be the same as that of the sales tax in the county. No additional tax shall be levied by this Act where a use tax is otherwise levied under the provisions of Act 26 of the First Extraordinary Session of 1981. Any tax levied under the provisions of this Act shall be levied, collected and administered in accordance with the provisions of Act 26 of the First Extraordinary Session of 1981.

Like the act which it repealed, Act 31 had been unanimously approved by the General Assembly. After the effective date of Act 31, a use tax was collected for Pulaski County by the Commissioner based upon that act and the sales tax approved in the 1982 election.

The appellees, Jamie D. Waters, et al. (Waters), without objection, were permitted to intervene and proceed as plaintiff

members of a taxpayer class that contested the validity of Act 31. Other counties had, by referenda, adopted both a sales and a use tax and were therefore excluded from the tax imposed by Act 31. The Chancellor determined that there was no legitimate governmental objective served by depriving Pulaski County residents of the same right to vote for a use tax as had been exercised by residents of other counties and ruled that Pulaski County voters should have been given the opportunity to vote on the use tax issue.

The City initially contends that Act 31 is not violative of the equal protection clause in either the United States or Arkansas Constitutions and is therefore constitutional.

The particular equal protection arguments advanced by Waters and adopted by the Chancellor were premised upon two underlying assumptions: (1) that citizens in Arkansas had a fundamental right to vote for the imposition of a use tax enacted by the General Assembly, and (2) that the collection, pursuant to Act 31, of such a use tax in Pulaski County without collecting the same tax in counties that had already imposed a use tax deprived citizens of equal protection under the laws.

A state's power to impose a use tax is not conferred. It inheres in the sovereign and is plenary. See 68 AM. JUR. 2d Sales and Use Taxes § 184 (1973). The right of the State of Arkansas to tax its citizens through the General Assembly was expressly conceded by the framers of the constitution. Ark. Const. art. 2, § 23. The General Assembly was authorized to delegate its taxing authority and impose restrictions upon any authority delegated to counties. The counties' authority to levy a tax through Act 991 and Act 26 could only be exercised by referendum. See Ragan v. Venhaus, supra. However, that restriction imposed upon subordinate governmental entities in no way limited the General Assembly's power to tax. See also County of Howard v. Rotenberry, 286 Ark. 29, 688 S.W.2d 937 (1985).

The right of citizens to vote on the imposition of sales and use taxes is alleged to exist because of a perceived statutory scheme to give citizens the opportunity to accept or reject such a tax through referendum. It is clear that the legislature intended to limit county governments' authority to tax its residents by

requiring an election. However, we do not find any indication that the legislature intended to relinquish or restrict its own power to tax. Where a use tax is imposed by the General Assembly, as with Act 31, there is no fundamental right of citizens to vote on that issue.

■ Equal protection analysis further depends upon the existence of some classification which impermissibly distinguishes between citizens. That classification may be contained in the wording of a statute; it may be found to exist because of an uneven application of a statute to different groups; or it may arise where different burdens are imposed on different classes of persons. *American Trucking Ass'n* v. *Gray*, 288 Ark. 488, 707 S.W.2d 759 (1986). Even where classifications are established, the United States Supreme Court has consistently held that, when structuring internal tax schemes, ". . .the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation," *Lehnhausen* v. *Lake Shore Auto Parts Co.,* 410 U.S. 356, 359 (1973), and the courts are reluctant to interfere with legislative policy decisions. *Regan* v. *Taxation with Representation of Washington*, 461 U.S. 540, 547-48 (1983).

■ Here, there was no impermissible classification established by the language of Act 31 or its application, and the use tax did not impose different burdens on different classes of persons. By passing their own sales *and* use tax under Act 26 (or by approving neither), citizens of any county have the same opportunity to avoid the imposition of the use tax otherwise imposed by Act 31. Conversely, a tax under Act 31 will be applied to every county adopting only a sales tax under Act 26 or Act 991. The language of Act 31 does not distinguish between citizens of the various counties, nor is any ultimate effect upon the counties by that act due to an improper classification that would invoke equal protection analysis. Pulaski County may choose to tax its residents differently from citizens in other counties. However, that does not impair the General Assembly's authority to levy a tax that avoids duplicate taxation in those counties already imposing both a sales and a use tax. (The use tax, regardless of whether imposed by the State or by the county, is ultimately credited to the particular county in which it was collected.) The end result is that where a sales tax is imposed under Act 991 or Act 26, a use

tax will also be levied (if not by the county, then by the State). Rather than imposing a different burden on citizens, the legislature has taken a step toward equalizing that burden.

Waters suggests that it was not fair to impose, without a vote, the Act 31 tax on residents of some counties while residents of other counties had the opportunity to impose the tax upon themselves through referenda. Waters also argues, quite persuasively, that it was unfair for the General Assembly to subsequently impose a use tax upon voters in Pulaski County who, in 1982, thought they were adopting only a sales tax. One must also question whether Pulaski County voters thought that, by imposing only a sales tax, they could restrict the State's power to subsequently impose a use tax more than five years later.

The tax structure in this state is based upon many different types of taxes, some of which are imposed by direct vote of the citizens and some of which are imposed by the citizens' duly elected representatives. Where those representatives fail to carry out the desire of the people, citizens are afforded the opportunity to voice their concern either directly to those legislators or at the polls when those officials face reelection. Whether a tax is fair should be decided by the legislators of this state who are elected by the people for that purpose. Here, the members of the General Assembly voted unanimously to impose a use tax, and the governor subsequently signed Act 31. This court's function, as one of the three branches of government, is confined to the question of the validity and interpretation of the actions taken by the other two branches. We find that the use tax imposed by Act 31 was a valid exercise of authority by the Arkansas Legislature.

The record reflects various other constitutional challenges to the validity of Act 31, each of which will discussed below since chancery court cases are reviewed de novo. *McGuire v. Bell*, 297 Ark. 282, 761 S.W.2d 904 (1988).

## I. LOCAL LEGISLATION

The City contends that Act 31 does not represent local legislation prohibited by the Fourteenth Amendment to the Arkansas Constitution. We agree that there is nothing in the act or its application that would support the contention that Act 31 is either local or special legislation. When analyzing legislation

under the Fourteenth Amendment to the Arkansas Constitution, we have distinguished between general, local, and special legislation as follows:

> A general law is one that operates upon all counties, cities and towns alike. A law is special in a constitutional sense when by force of an inherent limitation it arbitrarily separates some person, place or thing from those upon which, but for such separation it would operate and a local law is one that applies to any subdivision or division of the state less than the whole. *Board of Trustees* v. *Beard*, 273 Ark. 423, 620 S.W.2d 295 (1981) citing *Thomas* v. *Foust*, 245 Ark. 948, 435 S.W.2d 793 (1969).

That a statute may ultimately affect less than all of the State's territory does not necessarily render it local or special, *Littleton* v. *Blanton*, 281 Ark. 395, 665 S.W.2d 239 (1984). As noted in *Littleton*, legislation may run afoul of the fourteenth amendment, however, when a class established by the statute has no reasonable relation to the statute's purpose or the legislation omits an area that would naturally be included. *Id.* As previously discussed, there is no classification established by, or inherent limitation contained in, Act 31. The exclusions outlined in Act 31 prevent duplicate taxation in those counties that have imposed both the sales and use tax envisioned by prior legislation, and we cannot say such an exclusion is arbitrary or unreasonable. According to the stipulated facts, at least three other counties have, since the effective date of Act 31, enacted only sales tax ordinances for which Act 31 now imposes a compensating use tax. Act 31 will apply to any county subsequently adopting anything other than both a sales and a use tax ordinance and cannot, therefore, be considered local legislation.

## II. LEGISLATION BY REFERENCE

Another argument presented regarding Act 31 is that it does not violate the specificity requirements of Ark. Const. art. 5, § 23, which provides as follows:

> No law shall be revived, amended, or the provisions thereof extended or conferred by reference to its title only; but so much thereof as is revived, amended, extended or conferred shall be reenacted and published at length.

This portion of the Constitution has repeatedly been held to be inapplicable to an amendatory statute. *See e.g. Hall* v. *Ragland*, 276 Ark. 350, 635 S.W.2d 228 (1982). A comparison of Act 31 with Act 827 and section 17 of Act 26 reveals that Act 31 was an amendatory statute to section 17 of Act 26 that incorporated all of the language of that section in the subsequent reenactment.

Section 17 of Act 26 levied a use tax in all counties which, prior to its enactment, adopted only a sales tax under Act 991. Act 827 subsequently added Act 26 sales taxes and provided exclusions to avoid duplicate taxation. In repealing Act 827, Act 31 again used wording identical to section 17 of Act 26, adding the tax rate to be used and references to Act 26 for the administration, collection and levy of the tax. There can be no doubt that both Act 827 and Act 31 were amendments to section 17 of Act 26 and both of the amendatory acts contained all of that portion of the act which was amended. Act 31 was, from its effective date forward, a valid amendment of section 17 of Act 26.

## III. DELEGATION OF AUTHORITY AND VAGUENESS

In the chancery court, Waters contended that the delegation of substantive determinations to the Commissioner by Act 31 constituted an impermissible delegation of legislative power to the executive branch of government by the legislature. Waters also contended that Act 31 was void because its wording was so vague that it failed to provide judicial certainty as to the meaning of the statute. These arguments are premised upon the contention that Act 31 was an impermissible enactment by reference and must be construed without reference to any other act. As noted herein, Act 31 was an amendment to section 17 of Act 26 and must be read in conjunction with that act. Act 26, as amended, is not vague and contains no improper delegation of authority.

## IV. DUPLICATE TAXING PROVISIONS

As previously noted, taxpayers in Pulaski County successfully contested a county ordinance that was improperly enacted. *Ragan* v. *Venhaus, supra*. Waters proposes a public policy argument that the taxpayers' victory should not be taken away simply because the General Assembly enacted what is suggested

to be backup or stacked tax provisions.

■ The State's taxing authority is much broader than the limited authority delegated to the counties under Act 991 and Act 26. The improper adoption of a tax by a county does not prohibit the subsequent imposition of the same or similar tax by the proper authority. We find no violation of public policy for taxes validly imposed.

For the foregoing reasons, this case is reversed and remanded with instructions to remove the injunctions previously issued.

Reversed and remanded.

Special Justice G. ALLEN WOOTEN joins in this opinion.

NEWBERN, J., dissents.

DUDLEY and PRICE, JJ., not participating.

DAVID NEWBERN, Justice, dissenting. A major premise of the majority opinion is that the compensating use tax is one imposed by the General Assembly. In my view, the General Assembly only authorizes the imposition of the tax. It is imposed by a vote of the people who will pay it. Act 31 of the First Extraordinary Session of 1987 permits a vote to be taken using the ballot form which, in accordance with Act 991 of 1981, only apprises the voters that they are voting on a sales tax. The people are not told they will adopt a use tax as well.

The court's opinion states: "By passing their own sales and use tax under Act 26 (or by approving neither), citizens of any county have the same opportunity to avoid the imposition of the use tax otherwise imposed by Act 31." What of the voters in the cities or counties who pass a sales tax pursuant to Act 991 and unwittingly subject themselves to a use tax as well? The "opportunity" is but a sham with respect to voters who are informed only that they are voting on a sales tax.

The laudable balancing nature of a compensating use tax does not excuse the failure to inform the voters of what they are voting on. In other election contexts, such as ballot title reviews, we insist on full disclosure. *Arkansas Women's Political Caucus v. Reviere*, 283 Ark. 463, 677 S.W.2d 846 (1984). *See also*

*Gaines* v. *McCuen*, 296 Ark. 513, 758 S.W.2d 403 (1988); *Ferstl* v. *McCuen*, 296 Ark. 504, 758 S.W.2d 398 (1988); *Leigh* v. *Hall*, 232 Ark. 558, 339 S.W.2d 104 (1960). Allowing voters to be misled in the case of a compensating use tax will lead to allowing them to be hoodwinked on other matters. I would insist on full disclosure in this case and affirm the chancellor's decision.

I respectfully dissent.