The Honorable David Malone State Senator Post Office Box 1048 Fayetteville, Arkansas 72702
Dear Senator Malone:
This is in response to your request for an opinion on several questions relating to a county sales tax. Set forth below is that part of the text of your request that recites certain facts and poses questions:
 Pursuant to Act 991 of 1981, now codified as Ark. Code Ann. § 26-74-201 et seq. and -301 et seq., the electors of Washington County, Arkansas, in 1981, enacted a county-wide one percent sales tax. Later, the above referred Act was amended to allow, by interlocal agreement, the sales tax revenues to be distributed in a manner other than per capita.
 If there is a special county-wide census, can Washington county and its various municipalities enter into such an agreement to distribute the revenue on other than a per capita basis? Specifically, would such an agreement constitute an illegal exaction from a citizen in a municipality which gave up part of its share under the interlocal agreement? Do you see any other legal impediment to this interlocal agreement?
 May the county and municipalities enter into an agreement which would provide for a different method for sharing the burden of the payment for the census?
As a preliminary matter, it is important to outline briefly the history of the statutes here at issue. Arkansas Code Annotated §§ 26-74-301 etseq. (hereinafter "subchapter 3") was enacted as Act 991 of 1981. Later the same year, the General Assembly enacted Act 26 of 1981 (Ex. Sess.), which is codified as A.C.A. §§ 26-74-201 et seq. (hereinafter "subchapter 2"). This office, under a previous administration, later opined that Act 26 was intended to supersede and amend the provisions of Act 991, and that the two acts authorized only a single tax. Op. Att'y Gen. 88-227
(copy enclosed). The General Assembly thereafter enacted Act 36 of 1992 (1st Ex. Sess.), part of which is codified as A.C.A. § 14-164-338(d) (Supp. 1995) and provides in relevant part that "the General Assembly hereby finds and determines that [subchapters 2 and 3] each provide for the levy of up to a one percent (1%) sales and use tax. . . ." [Emphasis added.] Interpreting the foregoing, this office then issued Op. Att'y Gen. 93-078 (copy enclosed), which concluded that subchapters 2 and 3 authorize separate county taxes. See also City of Little Rock v. Waters,303 Ark. 363, 797 S.W.2d 426 (1990) (implicitly stating that subchapters 2 and 3 authorize separate taxes). Under this office's interpretation, then, the tax at issue must have been imposed under authority of either subchapter 2 or subchapter 3; it cannot have been enacted under the authority of both.[1]
As the answers to some or all of your questions may depend upon it, it would be desirable to determine under which subchapter the tax was imposed. No definite determination appears, however, to be possible from the facts set forth in your request. You state that the tax was imposed in 1981, but subchapters 2 and 3 were both effective prior to the end of 1981.[2] Your request states that the tax was imposed under Act 991 (subchapter 3), but it also states that "the above referred Act" was amended to permit other than per capita distribution. In fact, Act 61 of 1989 (3rd Ex. Sess.), which permits other distributions pursuant to interlocal agreements, amended only A.C.A. § 26-74-214(b)(2), clearly a part of subchapter 2, by express reference to that subsection; Act 61 did not make any change to subchapter 3. It accordingly appears to be necessary to answer your questions in the alternative.
Subchapter 3
The following discussion and conclusions assume the tax at issue was imposed under authority of subchapter 3 (A.C.A. § 26-74-301 to -319 (1987 and Supp. 1995)).
In my opinion, the State Treasurer may not distribute the proceeds of a tax imposed under subchapter 3 on any basis other than per capita. This conclusion is compelled by A.C.A. § 26-74-313(d)(1) (Supp. 1995), which provides:
 The State Treasurer shall transmit to the treasurer or financial officer of each city and county their per capita share, after deducting the amount required for claims, overpayments, and bad checks, as certified by the director.
This language imposes an affirmative duty upon the State Treasurer to distribute per capita the sales tax proceeds arising from taxes imposed under authority of subchapter 3. It admits of no exception to that requirement, and no other provision of subchapter 3 purports to permit any other distribution.[3]
In view of the foregoing, answers to your other questions regarding distribution of tax proceeds on a basis other than per capita appear to be unnecessary.
With regard to a special census, A.C.A. § 26-74-313(d)(2)(A) provides that "the cost of conducting [a special, countywide] census shall be borne by the several taxing units within the county in the same proportion that they will receive an increase in the distribution of a countywide sales tax as a result of the special census." In my opinion, this statute provides an exclusive, mandatory method of apportioning the costs of such a census, and apportionment and payment on any other basis would be subject to challenge as a misapplication of public funds and therefore an illegal exaction under Ark. Const. art. 16, § 13. Seegenerally Pledger v. Featherlite Precast Corp., 308 Ark. 124,823 S.W.2d 852, cert. denied, 506 U.S. ___, 113 S.Ct. 82, 121 L.Ed.2d 46
(1992) (discussing the two types of illegal exactions, the misapplication of public funds and the imposition of illegal taxes).
Subchapter 2
The following discussion and conclusions assume the tax at issue was imposed under authority of subchapter 2 (A.C.A. § 26-74-201 to -223 (1987 and Supp. 1995)).
Clearly, there is authority under A.C.A. § 26-74-214(b)(2) (Supp. 1995) to distribute proceeds of a tax imposed under authority of subchapter 2 on a basis other than per capita in certain circumstances. That subsection generally requires per capita distribution, but provides in part:
 If a distribution formula other than per capita is to be used, a copy of the interlocal agreement between the affected county and its municipalities shall be furnished to the State Treasurer and the distribution of the tax shall be as agreed upon.
Although the matter is not entirely clear, and a decision of the Supreme Court of Arkansas may be necessary to provide a definitive answer, it is my opinion that Act 61 of 1989 (3rd Ex. Sess.), which added to A.C.A. §26-74-214(b)(2) the language quoted above, was not intended by the General Assembly to permit a change in the distribution method of the proceeds of an existing subchapter 2 tax. I reach this conclusion for several reasons.
First, Act 61 was entitled:
 AN ACT to Amend Arkansas Code 26-74-214 to Allow for the Distribution of a Local Option Sales and Use Tax Imposed by a County Per the Distribution Formula Passed by the Voters and Agreed by the Cities and County. [Emphasis added.]
The General Assembly's use of the phrase "the Distribution Formula Passed by the Voters" is, in my opinion, a clear indication that the legislature intended distribution other than per capita to be permissible only when approved by the voters at the time of their approval of the tax. It is true that Act 61 did not amend the Code expressly to require such approval, but neither did it expressly provide any procedure whereby the distribution method of proceeds of an existing tax could be altered.
At least where the meaning of a statute is ambiguous, reference to its title is appropriate to determine the legislature's intent. Quinney v.Pittman, 320 Ark. 177, 895 S.W.2d 538 (1995) (requiring ambiguity as a condition to examining the title); Farnsworth v. White County,312 Ark. 574, 851 S.W.2d 451 (1993), and Routh Wrecker Service, Inc.v. Wins, 312 Ark. 123, 847 S.W.2d 707 (1993) (making no reference to ambiguity). In my view, the language of A.C.A. § 26-74-214(b)(2) quoted above is sufficiently ambiguous, if such is required, to permit reference to the title of Act 61. The language merely requires the State Treasurer to make distribution in accordance with the furnished agreement if an alternative distribution scheme "is to be used". It does not purport to settle the question of whether such a scheme may be applied to an existing tax, and the statute may fairly be characterized as being ambiguous on that point.
Second, the General Assembly's use of the words "is to be used" may constitute some expression of a legislative intent that alternative distribution schemes may not be applied to existing taxes. In my view, the ordinary meaning of the words used suggests that the legislature anticipated the parties' entry into the agreement and transmittal of a copy thereof to the State Treasurer prior to the initial imposition of the tax.
Third, and perhaps most significantly, the distribution of a tax imposed under authority of subchapter 2 on a basis other than per capita, such tax having previously been distributed per capita pursuant to a vote of the people, might be characterized as an illegal exaction under Ark. Const. art. 16, § 13. Prior voter approval of a tax under subchapter 2 is required. A.C.A. §§ 26-74-207(a), -209(d) (Supp. 1995). It would have been implicitly understood at the time of the vote on the tax at issue that distribution of the proceeds thereof would be per capita, and it cannot reasonably be denied that a voter's decision on the question of the tax might be affected by the anticipated distribution of proceeds. Because no voter approval of any other distribution scheme was expressed or can be inferred from the vote, a subsequent abandonment of per capita
distribution might be characterized as a misapplication of public funds.
With respect to the sharing of the costs of a special census, it is my opinion that the county and the municipalities having an interest in such a census may agree to apportion its costs in whatever manner deemed appropriate.[4] Unlike subchapter 3, subchapter 2 contains no affirmative requirement that such costs be shared in any particular manner, and it appears that this matter is one that should be left to the reasonable discretion of the parties to the agreement.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh
[1] It appears likely that some county ordinances, particularly those enacted prior to the passage of Act 36, recite that the (single) taxes imposed thereby are enacted under the authority of both subchapter 2 and subchapter 3. Such an ordinance may engender confusion and uncertainty when questions arise with respect to matters (like those addressed in your request) that are not treated identically by each subchapter. In my view, curative and clarifying legislation in this area would be of significant assistance to counties having such ordinances.
[2] Act 991 became effective April 8, 1981. See Certificate of Secretary of State, 1981 Ark. Acts (General) 2366. Act 26 became effective immediately upon its approval on December 1, 1981. See Act 26 of 1981 (Ex. Sess.), § 20. It appears likely, therefore, but not certain, that the tax at issue, being enacted in 1981, was imposed under authority of subchapter 3. In the event it is determined that the tax at issue was imposed under subchapter 3 and was in effect on December 1, 1981, the county should review section 16 of Act 26, which provides:
 All county sales taxes adopted under the provisions of Act 991 of 1981 which are in effect at the time of the effective date of this Act shall remain in full force and effect and are not repealed by the provisions of this Act except that such taxes shall be administered in accordance with this Act. [Emphasis added.]
This section is codified as both A.C.A. § 26-74-218 and A.C.A. §26-74-315. The latter section concludes with the words "shall be administered in accordance with [subchapter 2] and this subchapter," (emphasis added), while A.C.A. § 26-74-218 provides that subchapter 3 sales taxes in effect on December 1, 1981, "shall be administered in accordance with [subchapter 2]." Leaving aside the effect, if any, of the emphasized language of A.C.A. § 26-74-315, it appears that the original language of section 16 of Act 26, and the language of A.C.A. §26-74-218, suggest, at least, that the conclusions set forth in this opinion under the caption "SUBCHAPTER 2" would apply to a sales tax imposed under subchapter 3 but in effect on December 1, 1981. In connection with such a tax, the county should also review section 17 of Act 26, which provides:
 In all counties which have, prior to the effective date of this Act, adopted a local sales tax under the provisions of Act 991 of 1981, there is also hereby levied a local compensating (use) tax which shall in all respects be administered and enforced in accordance with the provisions of Act 991 of 1981 and the ordinance levying the local sales tax. [Emphasis added.]
This provision is codified as both A.C.A. § 26-74-219 and A.C.A. §26-74-316. The former section, like the quoted provision of the act, refers only to subchapter 3 and the levying ordinance with respect to the administration and enforcement of the use tax, while A.C.A. § 26-74-316
states that the use tax is to be administered and enforced "in accordance with the provisions of § 27-74-201 et seq. and this subchapter [3] and the ordinance levying the local sales tax." [Emphasis added.] Again leaving aside the effect, if any, of the seemingly anomalous language of the act as codified in subchapter 3, it appears that the original language of section 17 of Act 26, and the language of A.C.A. §26-74-219, suggest, at least, that the conclusions set forth in this opinion under the caption "SUBCHAPTER 3" would apply to the state-imposed use tax imposed in connection with a sales tax imposed under subchapter 3 and in effect on December 1, 1981. If the provisions of sections 16 and 17 of Act 26 are interpreted as suggested in this footnote, the result would be that a sales tax imposed under subchapter 3 and in effect on December 1, 1981, would be administered in accordance with subchapter 2 while the accompanying use tax would be administered in accordance with subchapter 3. As your request does not necessarily involve such a fact situation and you have not specifically inquired as to these matters, I express no opinion herein with respect to the narrow questions raised in this footnote.
[3] As noted above and discussed further below, Act 61 of 1989 (3rd Ex. Sess.) permits distribution of sales tax revenues arising under subchapter 2 on a basis other than per capita in certain circumstances, but nothing in that act can, in my view, fairly be read to apply to subchapter 3 funds. Act 61 took the form of an amendment of a particular, specified statutory provision, A.C.A. § 26-74-214(b)(2) (Supp. 1995), which makes express reference to "the tax authorized in this subchapter". There is no indication of a legislative intent to permit distribution other than on a per capita basis of any funds other than those arising from a tax imposed under authority of subchapter 2. Even if such a legislative intent could otherwise reasonably be inferred, the fact would remain that A.C.A. § 26-74-313(d)(1), appearing in subchapter 3, requires, in unequivocal terms, per capita distribution of subchapter 3 tax proceeds.
[4] Although I express no opinion with respect to the issue, it is not entirely clear that the State Treasurer is authorized or required to distribute the proceeds of a subchapter 2 tax on the basis of a special census. Subchapter 2 does not use the word "census" at all. It is my understanding that the State Treasurer distributes the proceeds of all currently existing subchapter 2 taxes using the most recent federal decennial census, and has not, to date, been requested to use a special census in the distribution of a subchapter 2 tax.