The Honorable Phillip Jackson State Representative 4015 Highway 143 Berryville, Arkansas 72616-4691
Dear Representative Jackson:
I am writing in response to your request for an opinion on the following question:
 Would constitutional problems arise under Articles 12, Section 7, Article 12, Section 12, Article 16, or any other constitutional provisions if the General Assembly enacted legislation to authorize creation of one or more private 501c3 or similar structured entities that would be able to accept a combination of private and public funding?
You state, as background for your question, that "[s]imilar questions have arisen regarding the Arkansas Development Finance Corporation Act and the Arkansas Capital Corporation. Both Andres v. First ArkansasDevelopment Finance Corporation, 230 Ark. 594, 324 S.W.2d 97 (1959)[1]
and McCutchen v. Huckabee, 328 Ark. 202 (1997)[2] address this issue." You also state, however, that these "opinions do not appear to fully clarify the range of possible constitutional problems surrounding the use of state moneys in assisting with funding private 501c3 or similarly structured entities."
RESPONSE
It is impossible to fully address this issue in the abstract, without reference to any particular proposed legislation. The answer will depend upon the provisions of the applicable legislative act creating or authorizing the corporation(s), and the facts surrounding the funding of the corporation(s), including whether the proposed public funding is provided by the State or by a political subdivision. Different constitutional provisions may be applicable depending upon the facts.
As an initial matter, as noted by the Arkansas Supreme Court inBunch v. State, 344 Ark. 730, 43 S.W.3d 132 (2001):
 Statutes are presumed constitutional, and the burden of proving otherwise is on the challenger of the statute. Ford v. Keith, 338 Ark. 487, 996 S.W.2d 20 (1999); ACW, Inc. v. Weiss, 329 Ark. 302, 947 S.W.2d 770 (1997). If it is possible to construe a statute as constitutional, we must do so. Jones v. State, 333 Ark. 208, 969 S.W.2d 618
(1998).
 Id. at 736.
Any legislation such as you describe would be entitled to a presumption of constitutionality.
In addition, as I noted in Op. Att'y Gen. 2004-300:
 . . . the legislature has the absolute power to legislate, unless prohibited from doing so by the constitution, either expressly or by necessary implication. Black v. Cockrill, 239 Ark. 367, 369, 389 S.W.2d 881 (1965). It is well settled that the Arkansas Constitution is not a grant, but a limitation of powers; and the legislature may rightfully exercise the power of the people, subject only to restrictions and limitations imposed by the Arkansas or United States Constitution. Wells v. Purcell, 267 Ark. 456, 592 S.W.2d 100 (1979). However, notwithstanding the foregoing, it is well established that constitutional provisions, including amendments, take precedence over any law passed by the legislature. Gravett v. Villines, 314 Ark. 320, 326, 862 S.W.2d 260 (1993).
 Id. at 10.
The first two provisions of the Arkansas Constitution you mention as possible prohibitions include Article 12, § 7 and Article 12, § 12, which provide respectively, as follows:
 § 7. State not to be stockholder.
 Except as herein provided, the State shall never become a stockholder in, or subscribe to, or be interested in, the stock of any corporation or association.
 § 12. State not to assume liabilities of political subdivisions or private corporations — Indebtedness to state — Release.
 Except as herein otherwise provided, the state shall never assume or pay the debt or liability of any county, town, city, or other corporation whatever, or any part thereof, unless such debt or liability shall have been created to repel invasion, suppress insurrection or to provide for the public welfare and defense. Nor shall the indebtedness of any corporation to the state ever be released or in any manner discharged save by payment into the public treasury.
You also mention "Article 16" in your question. Article 16 of the Arkansas Constitution contains 16 separate sections regarding finance and taxation. I assume your question in this regard may have primary reference to Section 1 of Article 16, which provides that:
 § 1. Lending credit — Bond issues — Interest-bearing warrants.
Neither the State nor any city, county, town or other municipality in this State shall ever lend its credit for any purpose whatever; nor shall any county, city or town or municipality ever issue any interest bearing evidences of indebtedness, except such bonds as may be authorized by law to provide for and secure the payment of the indebtedness existing at the time of the adoption of the Constitution of 1874, and the State shall never issue any interest-bearing treasury warrants or scrip.
This was the primary provision at issue in the case of Andres v. FirstArkansas Development Finance Corporation, 230 Ark. 594, 324 S.W.2d 97
(1959), one of the cases you mention in your request. See fn.1,supra.
The question of whether the provisions above have been transgressed will depend upon the substance and nature of the legislation in question. No meaningful conclusions can be reached in the absence of such language. I will note, however, that one of my predecessors addressed an issue regarding the funding of nonprofit corporations in Op. Att'y Gen. 96-320. In that opinion, my predecessor was asked whether ". . . it [was] legal for the Arkansas Department of Education to send money to or fund a nonprofit organization." In reply, my predecessor stated:
 There is no general prohibition in the Arkansas Constitution against the state "funding" a nonprofit organization or corporation. There is a prohibition against counties and cities doing so. See Arkansas Constitution, art. 12, § 5.[3] The fiscally restrictive provisions relevant to the State of Arkansas, however, do not expressly prohibit such funding, assuming none of the specific provisions are violated. See Arkansas Constitution, art. 5, § 31 (no appropriation may be made except to defray the "necessary expenses of government, to sustain common schools . . ." etc., except by a majority of two-thirds of both houses of the General Assembly); art 12, § 7 (State not to become a stockholder in any corporation or association); art. 12, § 12 (State not to assume or pay the debt of any county, city, town or corporation except as provided therein); art. 16, § 1 (State not to lend its credit or issue any interest bearing treasury warrants or scrip); and Amendment 20 (State not to issue evidence of indebtedness pledging the faith and credit of the State or any of its revenues for any purpose without the consent of the electors).
 Id. at 2.
In addition, my predecessor noted that any appropriation of funds toward such effort must also serve a "public purpose." Id. at 2,citing Humphrey, State Auditor v. Garrett, 218 Ark. 418, 236 S.W.2d 569
(1951); State v. Moore, 76 Ark. 197, 88 S.W. 881 (1905); State v.Sloan, 66 Ark. 575, 53 S.W. 47 (1899); Paving Improvement District No.51 of Texarkana v. Refunding Board of Arkansas, 191 Ark. 838,88 S.W.2d 50 (1935); Texarkana-Forest Park District No. 1 v. State,189 Ark. 617, 74 S.W.2d 784 (1934), overruled on other grounds; and Hall v. Ragland, Commissioner of Revenues, 276 Ark. 350,635 S.W.2d 228 (1982).
Some additional provisions of the Arkansas Constitution should be referenced in light of the fact that your question proposes not only possible state or local funding of a nonprofit corporation, as discussed above, but also the actual creation of such nonprofit corporation or corporations by legislative action. In my opinion, such legislation must therefore also be scrutinized for compliance with provisions of the Arkansas Constitution prohibiting "special legislation" and special acts conferring corporate powers. In this regard, the following provisions may be relevant:
 Article 12, § 6. General incorporation laws — Charters — Revocation.
 Corporations may be formed under general laws, which laws may, from time to time, be altered or repealed. The General Assembly shall have the power to alter, revoke or annul any charter of incorporation now existing and revocable at the adoption of this Constitution, or any that may hereafter be created, whenever, in their opinion, it may be injurious to the citizens of this State, in such manner, however, that no injustice shall be done to the corporators.
 Article 12, § 2. Special acts prohibited — Exception.
 The General Assembly shall pass no special act conferring corporate powers, except for charitable, educational, penal or reformatory purposes, where the corporations created are to be and remain under the patronage and control of the state.
 Amendment 14. Local Acts
 The General Assembly shall not pass any local or special act. This amendment shall not prohibit the repeal of local or special acts.
The applicability or prohibitory effect of any of these provisions will again depend upon the substance of the legislation in question.
The question of whether the state has "become a stockholder" in any corporation, impermissibly assumed the debt of such corporation, or loaned its credit thereto, will depend upon the pertinent legislation and actions taken under it.
In addition, any creation of a nonprofit corporation otherwise than "under general laws" may be scrutinized under Article 12, § 6, above.
To the extent your question contemplates the creation of a 501(c)(3) charitable corporation that will not "remain under the patronage and control of the state," Article 12, § 2 above must be considered. Relevant cases in this regard include Carson v. St. Francis LeveeDistrict, 59 Ark. 513, 27 S.W. 590 (1894) (stating that "acts of the legislature conferring corporate powers upon mere State agencies — bodies of citizens who have no personal or private interests to be subserved, but are simply required by the State to do some public work — are not acts conferring corporate powers, such as are referred to in the constitution"); and St. Louis, I.M. S Railroad Company v. Board ofDirectors of Levee District No. 2 of Jackson County, 103 Ark. 127,145 S.W. 892 (1912) (legislation creation of levee district did not violate Article 12, § 2).
Finally, as with any legislation of the General Assembly, the particular bill in question must not violate the applicable test for determining whether legislation is "special" in the constitutional sense. See e.g., Op. Att'y. Gen. 2003-013 (citing Board of Trustees v.City of Little Rock, 295 Ark. 585, 589, 750 S.W.2d 950 (1988) to the effect that: "An act is special if by some inherent limitation it arbitrarily separates some person, place, or thing from those upon which, but for such separation, it would operate," and stating that "[t]he operative term in this formulation is the word "arbitrarily," which implies that the legislative separation of one individual or group is permissible if justifiable," and noting that "[i]n McCutchen v.Huckabee, 328 Ark. 202, 208, 945 S.W.2d 225 (1997), the supreme court declared that the test for determining whether legislation is 'special' is the same 'rational basis' test applied in an equal protection analysis.")
Obviously, I cannot analyze the constitutionality of a hypothetical bill or legislative act. My ability to comprehensively state the general law that might be applicable to your question is circumscribed by the absence of any applicable facts. I hope that the foregoing will offer some assistance on the issue, however.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE, Attorney General
[1] In Andres, the Arkansas Supreme Court upheld, as against an Article 16, § 1 "lending the credit of the state" challenge, the "Arkansas Development Finance Corporation Act," which authorized the creation of an unlimited number of nonprofit development finance corporations to fund and promote new industry and business activities through the issuance of bonds that might be purchased by the State Board of Finance.
[2] In McCutchen, the Arkansas Supreme Court upheld, as against several constitutional challenges, an appropriation of twenty million dollars to a county public facilities board to help finance a multipurpose civic center in Pulaski County.
[3] The Article 12, 5 prohibition, however, does not prohibit cities and counties from appropriating moneys to other public entities. See e.g., McCutchen, supra, citing City of Paris v. Street Improvement Dist. No. 12, 206 Ark. 926, 175 S.W.2d 199 (1943).