CARWELL ELEVATOR CO., Inc.,
and Poinsett Rice & Grain, Inc. *v.*
Timothy LEATHERS, Commissioner of Revenue;
and Arkansas Rice Research and Promotion Board

02-240 101 S.W.3d 211

Supreme Court of Arkansas
Opinion delivered March 20, 2003

*Snellgrove, Langley, Lovett, & Culpepper,* by: *Todd Williams,* for appellants.

*Mark Pryor,* Att'y Gen., by: *Arnold M. Jochums,* Ass't Att'y Gen.; and *Friday, Eldredge & Clark,* by: *William A. Waddell, Jr.,* for appellees.

JIM HANNAH, Justice. Carwell Elevator Co., Inc., and Poinsett Rice & Grain, Inc., appeal the decision of the Circuit Court of Pulaski County finding that Carwell and Poinsett may not recover assessments of the Arkansas Rice Research & Promotion Board ("Board") that they paid as first-time rice buyers because the assessments were voluntarily paid. Carwell and Poinsett also appeal the trial court's finding that Carwell and Poinsett's claims that the assessments were illegal are precluded by laches.

Carwell and Poinsett allege that the trial court erred in failing to find that an illegal-exaction lawsuit creates a class suit. Carwell and Poinsett also allege that the trial court erred in failing to find that they are entitled to a refund of the assessments paid.

### Facts

Act 344 of 1995, codified at Ark. Code Ann. § 2-20-511 (Repl. 1996), authorized the Board to refer to the rice producers the question of whether the Board should levy an assessment of $1.35 per bushel to be paid by buyers of rice at the first point of sale. The producers approved the assessment, and beginning in August 1996, the assessment was collected. On August 14, 1996, Gulf Rice Arkansas, Inc. brought suit alleging that Act 344 constituted an unlawful delegation of taxing power under article 2, section 23, and an illegal exaction under article 16, section 13, of the Arkansas Constitution. The Gulf Rice suit was resolved at the trial level by summary judgment finding that Act 344 constituted an unlawful delegation of legislative authority. That summary judgment was appealed to this court and affirmed in *Leathers v. Gulf Rice Arkansas, Inc.,* 338 Ark. 425, 994 S.W.2d 481 (1999).

In *Gulf Rice*, this court affirmed the trial court's holding that Act 344 constituted an unconstitutional delegation of legislative authority. In addition, we noted that we did not address the issue of whether the assessment constituted an illegal exaction. In *Gulf Rice*, we stated, "Because we agree with the Chancellor that Act 344 is unconstitutional as an unlawful delegation of legislative power, it is unnecessary to examine whether the Act's assessment is also invalid as an illegal exaction" *Gulf Rice*, 338 Ark. at 434 n 1.

On February 15, 2000, Carwell and Poinsett filed an illegal-exaction suit in Pulaski County Circuit Court alleging that they are entitled to a refund of all assessments they paid after Gulf Rice filed its lawsuit in 1996. This case was tried before the circuit court on October 8, 2001.

In bench trials, the standard of review on appeal is not whether there is any substantial evidence to support the finding of the court, but whether the judge's findings were clearly erroneous or clearly against the preponderance of the evidence. *Shelter Mut. Ins. Co v. Kennedy,* 347 Ark. 184, 60 S.W.3d 458 (2001); *Schueck v. Burris,* 330 Ark. 780, 957 S.W.2d 702 (1997).

### Illegal Exaction

Carwell and Poinsett argue that the trial court erred in failing to find that an illegal-exaction lawsuit creates a constitutional class action entitling them to refunds of rice assessments they paid pursuant to the assessment levied under Act 344. Carwell and Poinsett rely upon the holding in *Gulf Rice, supra,* that Act 344 constituted an unlawful delegation of legislative authority. Carwell and Poinsett allege that they are members of the class of rice buyers in *Gulf Rice, supra,* and therefore there is already a finding that the assessment was illegal. On that basis Carwell and Poinsett allege they are entitled to a refund of the assessments they paid.

However, the trial court found that as a matter of fact and law, *Gulf Rice* was not a class action on behalf of all rice buyers subject to the assessment, and that the case only adjudicated the rights of Gulf Rice. Therefore, the trial court rejected Carwell and Poinsett's claims they were members of the class in *Gulf Rice, supra.*

We disagree with the trial court. The issues adjudicated in *Gulf Rice, supra* were not limited to Gulf Rice. The

decree by the trial court in *Gulf Rice, supra* declared Act 344 unconstitutional and enjoined "assessments on first buyers of Arkansas Rice pursuant to Act 344 of 1995 . . . ." Thus, it is clear the decree in the Gulf Rice case reached all first buyers of Arkansas Rice, both because it declared the assessment unconstitutional, and because it enjoined further collection of the assessment. *Gulf Rice* was a class action on behalf of all first buyers of Arkansas Rice. It is true that the injunction was stayed by the trial court in *Gulf Rice* pending appeal, however, staying the injunction does not alter the finding stated in the decree that Act 344 was unconstitutional as to all first buyers of Arkansas Rice. Nor does staying the injunction alter that the injunction enjoined all collection of the assessments, not just the assessments against Gulf Rice.

Carwell and Poinsett attempt to avail themselves of the rule that taxes paid after a complaint is filed in an illegal-exaction suit are deemed paid in protest and are recoverable. *See Elzea v. Perry*, 340 Ark. 588, 12 S.W.3d 213 (2000). Carwell and Poinsett are asserting a right to recover all assessments they paid after Gulf Rice filed its complaint in *Gulf Rice, supra*. They argue that as members of the class in *Gulf Rice* they are entitled to rely on Gulf Rice's complaint.

■ Taxes paid by a party after the filing of a complaint in illegal exaction are deemed paid in protest and are recoverable. *Elzea, supra*. However, because the trial court found that *Gulf Rice,* was not a class action, the trial court concluded Carwell and Poinsett could not rely on Gulf Rice's complaint and therefore the assessments were voluntarily paid and nonrecoverable. The trial court applied the common-law rule that taxes voluntarily paid are not recoverable. *See Elzea, supra*. Again we disagree.

■ ■ The Gulf Rice litigation was a class suit because a suit in illegal exaction is a class suit as a matter of law. *Worth v. City of Rogers*, 351 Ark. 183, 89 S.W.3d 875 (2002). Any assessments paid by Carwell and Poinsett after the filing of the complaint in *Gulf Rice* were paid in protest. *Elzea, supra*.

However, the trial court also found that recovery by Carwell and Poinsett was precluded based on laches. As discussed below, notice to Carwell and Poinsett was fatally defective. Therefore, recovery may not be precluded based on laches. The trial court also found that there was no fund from which any recovery might

be paid. We must note that the decree in the Gulf Rice case finding Act 344 unconstitutional and the injunction on behalf of all first buyers of Arkansas Rice put the Board on notice. Yet rather than put the assessments collected in escrow to safeguard them pending the outcome of the litigation, the Board spent them. Assessments, however, have been collected under a subsequent act and continue to be collected.

 Carwell and Poinsett argue correctly that an illegal-exaction suit arises as a class-action suit under the constitution. *Worth, supra.* In *Martin v. Couey Chrysler Plymouth, Inc.,* 308 Ark. 325, 824 S.W.2d 832 (1992), this court stated:

> The wording of Ark. Const. art. 16, §13 is broad and not to be narrowed by statute or interpretation. We believe our cases are consistent with that concept. But we also think it clear that the provision was not intended to be the vehicle by which taxpayers air individual grievances in the methods by which taxes are assessed and collected. Rather, it was intended to be the means by which taxpayers, generally, in a collective capacity, resist illegal exaction.

*Martin,* 308 Ark. at 331. In *Laman v. Moore,* 193 Ark. 446, 100 S.W.2d 971 (1937), this court discussed an illegal-exaction suit where the original plaintiff who brought the suit had moved away from the city and Laman had intervened to continue the suit. An objection was raised that the only proper means for Laman to proceed was by a separate and independent action. This court stated:

> The suit as originally brought was necessarily for the benefit of all taxpayers of the city and might as well be prosecuted in the name of one as of another. No prejudice whatever resulted to the defendants (appellees) by allowing appellant to become a party plaintiff for the purpose of prosecuting the suit. Neither the original plaintiff nor the appellant could recover a personal judgment against any of the appellees (defendants) except for the benefit of all taxpayers of the city.

*Laman,* 193 Ark. at 447-48.

Thus, it is this clear that an illegal-exaction suit is a collective single action prosecuted on behalf of all affected taxpayers. In 1944, this court stated an illegal-exaction suit under article 16, section 13, "is made a class suit in which any citizen may sue for the benefit of himself and all other interested citizens. . . ." *Samples v. Grady,* 207

Ark. 724, 182 S.W.2d 875 (1944). *See also, Nelson v. Berry Petroleum Co.*, 242 Ark. 273, 413 S.W.2d 46 (1967); *Schuman v. Ouachita County*, 218 Ark. 46, 234 S.W.2d 42 (1950). Moreover, this court has recently stated that an illegal-exaction suit is a class suit as a matter of law. *Frank v. Barker*, 341 Ark. 577, 20 S.W.3d 293 (2000); *Carson v. Weiss*, 333 Ark. 561, 972 S.W.2d 933 (1998).

Thus, the suit in *Gulf Rice* and the suit in the present case are both class suits under article 16, section 13, of the Arkansas Constitution based on the same alleged illegal levy. This raises the question of whether considering the issue of illegal exaction under Act 344 a second time is precluded by the doctrine of *res judicata*. In *Rigsby v. Ruraldale Consol. Sch. Dist. No. 64*, 180 Ark. 122, 20 S.W.2d 624 (1929), the defendants raised *res judicata* asserting that the issues had already been litigated in a prior suit. Rigsby had sued under article 16, section 13, as had the parties to the first suit, and this court stated that "all citizens were bound by the result of the suit brought against appellees by R.M. Johnson upon all issues presented by the pleadings and testimony in the Johnson case." *Rigsby*, 180 Ark. at 124. In *McCarroll v. Farrar*, 199 Ark. 320, 134 S.W.2d 561 (1939), this court discussed that the doctrine of *res judicata* precluded a subsequent suit by another taxpayer under article 16, section 13, because a case under article 16, section 13, is a case under virtual representation and every citizen is regarded as a party to the proceedings. *McCarroll, supra. See also, Laman, supra.*

■ ■ The concept of *res judicata* has two facets, one being issue preclusion and the other claim preclusion. *Huffman v. Alderson*, 335 Ark. 411, 983 S.W.2d 899 (1998); *John Cheeseman Trucking, Inc. v. Pinson*, 313 Ark. 632, 855 S.W.2d 941 (1993). Under claim-preclusion, a valid and final judgment rendered on the merits by a court of competent jurisdiction bars another action by the plaintiff or his privies against the defendant or his privies on the same claim. *Huffman*, supra. *Res judicata* bars not only the relitigation of claims which were actually litigated in the first suit, but also those which could be litigated. *Id.* Where a case is based on the same events as the subject matter of a previous lawsuit, *res judicata* will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies. *Id.* Issue preclusion, or collateral estoppel, bars relitigation of issues. *Crockett & Brown v. Wilson*, 314 Ark. 578, 864 S.W.2d 244 (1993). In *State v. Thompson*, 343 Ark. 135, 34 S.W.3d 33 (2000), we stated of collateral estoppel:

> When an issue of ultimate fact has once been determined by a valid and final judgment, collateral estoppel precludes relitigation of that issue between the same parties in any future proceeding. *E.g., Edwards v. State*, 328 Ark. 394, 943 S.W.2d 600, *cert. denied*, 522 U.S. 950 (1997) (quoting *Schiro v. Farley*, 510 U.S. 222, 232 (1994)). In order to establish collateral estoppel, proof of the following is required: 1) the issue sought to be precluded must be the same as that involved in the prior litigation; 2) the issue must have been actually litigated; 3) the issue must have been determined by a final and valid judgment; and 4) the determination must have been essential to the judgment. *Edwards*, 328 Ark. at 401-02, 943 S.W.2d at 603.

*Thompson*, 343 Ark. at 139-40.

Thus, if the issue of whether the assessments amounted to an illegal exaction was not decided in *Gulf Rice*, litigation of the issue may now be precluded as an issue which could have been litigated. The concern about multiple suits in illegal exaction was discussed in *McCarroll, supra*, where this court considered the issue of a second suit alleging the same illegal exaction arising from implementation of the same alleged unconstitutional act. This court stated:

> If a suit of this character is not a bar, then one citizen after another might institute a suit for himself and others against the Commissioner of Revenues, and if the judgment in one suit was not a bar, this could continue until every citizen in the state had brought suit. The doctrine of res judicata is not only to protect the individual, but it is a matter of public policy.

*McCarroll*, 199 Ark. at 325. *See also, Rigsby, supra*.

█ It is clear that the issue of an illegal exaction was raised by the litigation in *Gulf Rice*, however, the trial court did not specifically rule that the assessment constituted an illegal exaction. Nonetheless, the decree in *Gulf Rice* declared Act 344, which created the assessment, unconstitutional and enjoined further collection of the assessment under Act 344. Whether the trial court declared the assessment to be an illegal exaction is not material because *res judicata* would not be a bar under the facts of this case in any event. The doctrine of *res judicata* applies against a party only when the party had a fair and full opportunity to litigate the issue in question. *Huffman, supra; Bailey v. Harris Brake Fire Protection District*, 287 Ark. 268, 697 S.W.2d 916 (1985). *See also, Kremer v. Chemical Constr. Co.*, 456 U.S. 461, 481 n.22 (1982);

*Lovell v. Mixon,* 719 F.2d 1373 (8ᵗʰ Cir. 1983). The trial court found that Carwell and Poinsett became aware of Gulf Rice's suit shortly after it was filed, and that they then held the belief that the assessment was illegal. The trial court also found that the plaintiff in *Gulf Rice* intentionally prosecuted its case as an individual lawsuit and not as a class suit. The mere knowledge that Gulf Rice filed suit and a belief that the assessment was illegal does not rise to the level of knowledge that would be required to apply *res judicata.*

 ██ Notice is required in illegal-exaction cases. *Worth, supra.* Notice of an illegal-exaction suit was not provided in *Gulf Rice.* Gulf Rice attempted to proceed individually and no adequate notice of an illegal-exaction suit was provided to class members. The notice must inform the class members:

> 1. That the illegal-exaction suit is pending and what it alleges;
> 2. That the class is established by the constitution and who it includes;
> 3. That a class member may not opt out and will be bound by any judgment;
> 4. That class members may wish to become named parties to have greater input in the remedy sought;
> 5. That class members may wish to become named parties to assure there is no collusion or friendly lawsuits, and to have input in the amount of attorney's fees granted; and 6. That class members may declare any alleged illegal tax voluntarily paid so as to remove it from the illegal-exaction suit.

*See generally T&T Chem., Inc. v. Priest,* 351 Ark. 537, 95 S.W.3d 750 (2003); *Worth, supra; Martin, supra; Samples, supra; McCarroll, supra; Laman, supra; Rigsby, supra; Dreyfus v. Boone,* 88 Ark. 353, 114 S.W. 718 (1908).

 ██ Further, as we stated in *Dreyfus, supra,* it is the duty of the court to construe the complaint in an illegal-exaction suit to be one for the relief of all. This was not done by the trial court in *Gulf Rice.* Also, contrary to Gulf Rice's attempt to litigate its claim individually, as the taxpayer who initiated the suit, Gulf Rice was without the authority to waive contentions that should have been asserted on behalf of the class. *Chandler v. Bd. of Tr. of the Teacher Ret. Sys. of Ark.,* 236 Ark. 256, 365 S.W.2d 447 (1963). We hold that there was a lack of notice to Carwell and Poinsett, and that neither Carwell nor Poinsett had a fair and full

opportunity to litigate the issue in question. Therefore, the present suit is not precluded by *res judicata*. *Huffman, supra.*

## Laches

 The trial court found that Carwell and Poinsett became aware of the Gulf Rice suit shortly after it was filed, and that they then held the belief that the assessment was illegal. Therefore, the trial court concluded the doctrine of laches applied. The doctrine of laches was laid out in *Goforth v. Smith*, 338 Ark. 65, 991 S.W.2d 579 (1999):

> The doctrine of laches is based on a number of equitable principles that are premised on some detrimental change in position made in reliance upon the action or inaction of the other party. *Andarko Petroleum v. Venable*, 312 Ark. 330, 850 S.W.2d 302 (1993). It is based on the assumption that the party to whom laches is imputed has knowledge of his rights and the opportunity to assert them, that by reason of his delay some adverse party has good reason to believe those rights are worthless or have been abandoned, and that because of a change of conditions during this delay it would be unjust to the latter to permit him to assert them. *Self v. Self*, 319 Ark. 632, 893 S.W.2d 775 (1995). Laches requires a demonstration of prejudice to the party alleging it as a defense resulting from a plaintiff's delay in pursuing a claim. *Swink v. Giffin*, 333 Ark. 400, 970 S.W.2d 207 (1998).

*Goforth*, 338 Ark. at 77-78. The first requirement in laches is that the party have a knowledge of his or her rights and the opportunity to assert those rights. As already noted, the present suit is not precluded by *res judicata*. The required notice was not provided in the Gulf Rice litigation. The illegal assessments were paid by Carwell and Poinsett through July 1999, and suit was brought in February 2000. Laches is inapplicable under these facts. We also must note that the Board continued to spend the money received from the assessments rather than place it in escrow even though the Board was on notice the assessment was illegal and therefore might have to be refunded. The Board may not now assert that it is unable to pay back the money it knew it was receiving under a tax declared unconstitutional by the chancery court.

*Remaining Issues*

■ Carwell and Poinsett assert that this court may order a refund. Refunds are available in illegal-exaction cases. *Hasha v. City of Fayetteville*, 311 Ark. 460, 845 S.W.2d 500 (1993). However, a decision on a refund must first be decided in the trial court. This case is remanded for the trial court to require proper notice and proceed with an illegal-exaction class suit.

Reversed and remanded.

GLAZE, IMBER, and THORNTON, JJ., concurring in part and dissenting in part.

T OM GLAZE, Justice, concurring in part and dissenting in part. I join Justice IMBER's opinion. The majority opinion is seriously mistaken in deciding *res judicata* does not apply, and then proceeds to direct that this case should be returned to relitigate the entire matter. As Justice Imber ably points out, all of the rice buyers were affected by the illegal assessment, and they are entitled to a refund of any payments they made under the unconstitutional assessment. This court has long-established law that, when a taxpayer brings an illegal-exaction suit, that taxpayer represents all other affected parties in the class-action litigation.

If the majority wishes to require a notice to all affected parties who have paid an illegal tax or assessment at the time a party commences a class-action illegal-exaction suit, this court should highlight that deviation from prior case law by applying such newly adopted notice effective prospectively. Better yet, to make matters clear, this court should promulgate a rule that requires such a notice upon filing illegal-exaction suits, if the court is convinced it should do so. This case is not the vehicle to impose such a new procedure or rule because, to do so, ignores a long list of case law on the subject and needlessly continues litigation in this case.

IMBER and THORNTON, JJ., join this opinion.

A NNABELLE CLINTON IMBER, Justice, concurring in part and dissenting in part. While I concur with the majority that this case must be reversed and remanded, I must respectfully disagree with the majority's contention that *res judicata* is not

a bar under the facts in this case. Quite the contrary, *res judicata* does apply to the appellants in this case, but *res judicata* itself does not negate the remedy they seek.

In our recent decision in *State Office of Child Support Enforcement v. Willis*, 347 Ark. 6, 59 S.W.3d 438 (2001), we set out the factors of *res judicata*:

> *Res judicata* bars relitigation of a subsequent suit when: (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies . . . . The policy of the doctrine is to prevent parties relitigating issues on which they have already been given a fair trial.

*Id.* at 13, 59 S.W.3d at 443.

In this case, the original suit brought by Gulf Rice was an illegal-exaction suit; therefore, it was a class action as a matter of law. *Worth v. City of Rogers*, 351 Ark. 183, 89 S.W.3d 875 (2002). Though the appellees in this case attempt to carve the appellants out of the order of the trial court in the original suit, Gulf Rice was merely the named party who represented all other affected parties in the class action, including the appellants. *Id.*; *see also Laman v. Moore*, 193 Ark. 446, 100 S.W.2d 971 (1937) (in a class action, no plaintiff may recover a personal judgment against a defendant except for the benefit of all similarly situated taxpayers).

As to *res judicata*, the five elements are met; therefore, *res judicata* does apply. First, the original suit, *Leathers v. Gulf Rice Arkansas, Inc.*, 338 Ark. 425, 994 S.W.2d 481 (1999), resulted in a final judgment on the merits, in that the trial court's decree found that Act 344 was "unconstitutional as to *all* first buyers of Arkansas Rice" (emphasis added). The decree enjoined the collection of *all* assessments, not just those of Gulf Rice, the named plaintiff. Second, the *Gulf Rice* suit was based on proper jurisdiction. Third, the first suit was fully contested in good faith, as evidenced by the decree, which found the assessments unconstitutional and ordered an injunction and a refund. Fourth, both the original suit and this suit involve the same claim or cause of action — that Act 344 was unconstitutional. Finally, both suits involve the same parties

because all first buyers of rice were parties in the original suit, by virtue of its status as an illegal-exaction class-action suit. Therefore, *res judicata* applies to the appellants in this case as to the outcome of the litigation.

However, that is not to say that the appellants are without a remedy. On the contrary, because the remedy granted in the original suit was an injunction and a refund to the named plaintiff, that remedy applies to all the plaintiff parties in the original case, including the appellants in this subsequent suit, and all other rice buyers who were affected by the illegal assessment. Thus, *res judicata* applies to all affected rice buyers as to both points: the result of the litigation and the remedy, and all affected rice buyers are entitled to a refund of any payments they made under the unconstitutional assessment.[1]

The decision of the trial court should be reversed, and the case remanded for notification to all affected rice buyers so that they can make a claim for their refunds, if they so choose. I would remand this case for this notification, and for the trial court to set up a system by which claims may be made in a timely fashion.

GLAZE and THORNTON, JJ., join.

---

[1] The majority directs the trial court to "require proper notice and proceed with an illegal-exaction class suit." This direction is erroneous in that it violates the doctrine of *res judicata* and would relitigate that which has already been litigated to final judgment. As the majority notes, an illegal-exaction suit is a class action as a matter of law. *Worth v. City of Rogers*, 351 Ark. 183, 89 S.W.3d 875 (2002). To require notice now, after the completion of the suit, would undercut this principle, and would have long-reaching effects in other illegal-exaction suits. Following the majority's "notice" requirement to its logical conclusion would mean that all illegal-exaction suits could be re-litigated again and again, if a taxpayer received no notice of the suit. This flies in the face of the history of illegal-exaction suits in Arkansas, and has the potential of opening the floodgates of litigation every time a taxpayer is not happy with the results of an illegal-exaction lawsuit. In this case, no "notice" as set forth in *Worth, supra*, is required to be given to the affected rice buyers, because that notice is pre-litigation notice that is given in order that affected taxpayers in an illegal-exaction suit may intervene if they wish, in order to have greater input into the remedy sought. In this case, the greatest possible remedy, both an injunction and a refund, was granted by the trial court, so there is no need to notice the class for this purpose. The only notification necessary is that which would instruct the affected class members on how to claim their refunds.