Richard BARCLAY, Director, Department of Finance &
Administration; Floyd G.Villines, Pulaski County Judge, City of Little
Rock, City of North Little Rock, City of Jacksonville, City of
Sherwood, City of Wrightsville, City of Cammack Village, City of
Alexander, City of Maumelle, *v.* Jamie D. WATERS, Edward M.
Bozovsky, Roy J. West

03–369                                                      182 S.W.3d 91

Supreme Court of Arkansas
Opinion delivered May 20, 2004

[Rehearing denied June 24, 2004.*]

---

* CORBIN, IMBER, & HANNAH, JJ., would grant rehearing.

388

*Thomas M. Carpenter*, Little Rock City Attorney; *Paul Suski*, North Little Rock City Attorney; and *Karla M. Burnett* and *Amanda Mankin-Mitchell*, attorney for Pulaski County, for appellant.

*Jack, Lyon & Jones, P.A.*, by: *Eugene G. Sayre*, for appellees.

BETTY C. DICKEY, Chief Justice. This appeal represents the third illegal-exaction challenge against the imposition of a local one-percent compensating-use tax within Pulaski County. Based on *Daniel v. Jones*, 332 Ark. 489, 966 S.W.2d 226 (1998), which the trial court claimed overruled *City of Little Rock v. Waters*, 303 Ark. 363, 797 S.W.2d 426 (1990) (*Waters I*), the trial court ruled that the imposition of a one-percent compensating use tax pursuant to Act 31 of 1987, First Extraordinary Session, was invalid because the affected taxpayers were not allowed to vote for or against the tax, but that its ruling should be prospectively applied. On appeal, the appellants argue the following points: (1) the trial court erred by refusing to dismiss the suit under the doctrines of *res judicata* and collateral estoppel in light of this court's decision in *Waters I*, and (2) the trial court erred in finding that Act 31 is invalid. Appellees bring a cross-appeal arguing that the trial court erred by only ordering prospective injunctive relief to the affected taxpayers rather than ordering refunds retroactively. Because we hold that the trial court clearly erred as a matter of law, we reverse. In so holding, the cross-appellants' argument is rendered moot, thus we dismiss their cross-appeal.

### Facts

In 1982, voters in Pulaski County approved a local one-percent sales tax. That ballot title referred only to the sales tax, but

pursuant to the provisions of Act 991 of 1981, as amended by the provisions of Act 26 of 1981, the county imposed, by ordinance, collection of a one-percent compensating use tax. That tax was collected from September of 1982, through June of 1986. In *Regan v. Venhaus*, 289 Ark. 266, 711 S.W.2d 467 (1986), the court declared the imposition of the compensating use tax an illegal exaction because the tax was imposed by county ordinance without a vote of the taxpayers.

Subsequently, the General Assembly enacted Act 31 of 1987, which imposed the one-percent compensating use tax that is presently at issue. That act provides:

> SECTION I. In all counties which adopt a local sales tax under the provisions of Act 991 of 1981 or Act 26 of the First Extraordinary Session of 1981 or which have, prior to the effective date of this act (September 4, 1987), adopted a local sales tax under the provisions of Act 991 of 1981, or Act 26 of the First Extraordinary Session of 1981, there is also hereby levied a local compensating use tax. The rate of use tax levied by this Act shall be the same as that of the sales tax in the county. No additional tax shall be levied by this Act where a use tax is otherwise levied under the provisions of Act 26 of the First Extraordinary Session of 1981. Any tax levied under the provisions of this Act shall be levied, collected and administered in accordance with the provisions of Act 26 of the First Extraordinary Session of 1981.

After the effective date of Act 31, September 11, 1987, the use tax was collected for Pulaski County based on the one-percent sales tax approved in 1982. In *Waters I*, the court held that the use tax so collected pursuant to Act 31 did not violate the equal protection clauses of the United States and Arkansas constitutions. In finding Act 31 to be valid, the court held:

> The tax structure in this state is based upon many different types of taxes, some of which are imposed by direct vote of the citizens and some of which are imposed by the citizens' duly elected representatives. Where those representatives fail to carry out the desire of the people, citizens are afforded the opportunity to voice their concern either directly to those legislators or at the polls when those officials face reelection. Whether a tax is fair should be decided by the legislators of this state who are elected by the people for that purpose. Here, the members of the General Assembly voted unanimously to impose a use tax, and the governor subsequently signed Act 31. This court's function, as one of the three branches of

government, is confined to the question of the validity and interpretation of the actions taken by the other two branches. *We find that the use tax imposed by Act 31 was a valid exercise of authority by the Arkansas Legislature.*

*Waters I,* 303 Ark. at 370 (emphasis added). Further, the *Waters I* court held that Act 31 is not local or special legislation.

Subsequently, in *Daniel v. Jones,* 332 Ark. 489, 966 S.W.2d 226 (1998), this court struck down, as an illegal exaction, a White County one-percent sales tax that had been approved by the voters. There, the ballot specified five uses for the proposed tax. However, it was undisputed that the tax revenues were being used for purposes other than those stated on the ballot based on Act 991 of 1981, which provided that a portion of the tax collected be distributed to the cities on a per capita basis. The funds so received by the cities were being used for purposes other than those specified on the ballot. In reversing the trial court's dismissal of the action, the *Daniel* court held that the voters' right to be fully informed on the matter for which they were casting their votes is paramount. In sum, the *Daniel* court held that to the extent that *Waters I* conflicted with its holding, *Waters I* was overruled. Specifically, the *Daniel* court stated:

> We decline to follow the reasoning of *Waters.* Instead, we conclude that the holding in *Waters* is incorrect, and we overrule that decision to the extent that it conflicts with our holding today. We now embrace the reasoning expressed by the dissent in that case, namely that the voters' right to be fully informed of the matter for which they are casting their votes is paramount. In other words, where the General Assembly has established the right of the voters to approve the imposition of a tax, any consideration of the legislature's general power to tax is secondary to the voters' right to full disclosure of the nature of the tax and its proposed purposes. "[T]he General Assembly only authorizes the imposition of the tax. It is imposed by a vote of the people who will pay it." *Waters,* 303 Ark. at 373, 797 S.W.2d at 432 (Newbern, J., dissenting).

*Daniel,* 332 Ark. at 502.

Based on that holding, a week later, the appellees, Pulaski County taxpayers, filed the present challenge to the use tax imposed by Act 31. They argued that the opinion in *Daniel* rendered *Waters I* a nullity, as if it had never existed, and that the holding in *Daniel* required the trial court to issue an injunction

against collection of the use tax in Pulaski County. In response to the complaint, the appellants filed motions to dismiss on the grounds of *res judicata*, collateral estoppel, and failure to state a claim under Ark. R. Civ. P. 12(b)(6).

The trial court denied the appellants' motions to dismiss, finding that *Daniel* overturned *Waters I*, and that the present lawsuit challenged taxes under a different tax period than that challenged in *Waters I*. The trial court issued an order certifying the class action and the facts were stipulated. Following a hearing on the issue of prospective or retroactive application of an injunction and submission of the parties' briefs, the trial court ruled that the appellants' continued imposition of the one-percent use tax pursuant to Act 31 was an illegal tax because an election on the tax had not been held. Further, based on *Pledger v. Bosnick*, 306 Ark. 45, 811 S.W.2d 286 (1991), the trial court found that the appellants were entitled to rely on the holding in *Waters I* and ruled that implementation of its order would be prospective from September 1, 2002. The trial court ordered that any and all amounts of the tax collected after August 31, 2002, were to be held in escrow by the State Treasurer.

### Effect of Daniel on Waters I

Before we can address the issue of *res judicata,* it is imperative that we address the effect of *Daniel* on *Waters I*. As the appellees' counsel has agreed, the case rises or falls on whether *Daniel* overrules *Waters I*. Therefore, this court must determine precisely what *Daniel* held.

In *Daniel,* 332 Ark. 489, the court concluded that the sales tax in White County was an illegal exaction because the ballot failed to disclose all the purposes to which the tax revenues were assigned. In addressing the argument that the voters should have known, ostensibly from statutory law, that the cities would be receiving their share of the taxes, the *Daniel* court examined *Waters I*, where the court had upheld the imposition of the use tax on the grounds that the General Assembly has the inherent authority to impose a tax and that there is no fundamental right of the citizens to vote on that issue. The *Daniel* court rejected the broad application of the holding in *Waters I*, by stating that "where the General Assembly has established the right of the voters to approve the imposition of a tax, any consideration of the legislature's general power to tax is secondary to the voters' right to full disclosure of the nature of the tax and its proposed purposes." *Id*. at 502. Thus,

where the General Assembly delegates its taxing authority to the counties and cities, fully informed voters in the affected areas are entitled to make the ultimate decision. The General Assembly has the inherent authority to either impose a tax directly or to delegate imposition of a tax, and where delegated, the voters' rights are paramount. *Daniel* did not, and could not, overrule the General Assembly's inherent authority to impose a tax directly. Finally, nothing in the law prohibits tying the imposition of a tax directly by the General Assembly to an existing tax that was delegated and approved by the affected voters.[1]

■■ That analysis of *Waters I* in *Daniel* was limited to the facts in *Daniel*. Like the tax found to be an illegal exaction in *Regan v. Venhaus*, 289 Ark. 266, S.W.2d 467, the illegal expenditure in *Daniel* was authorized by the General Assembly but imposed by the county government without a vote by the affected citizens. In neither case was the tax nor the purposes for the tax, respectively, fully disclosed to the voters through the ballot. In other words, to the extent that *Waters I* allowed county governments to impose a tax without an informed vote, even when authorized by the General Assembly, any tax so collected is an illegal exaction. We reaffirm the holding in *Daniel*, that when a ballot title states that specific funds will be spent in a certain way, the money must then be spent in that manner. *See also Western Foods, Inc. v.* Weiss, 338 Ark. 140, 992 S.W.2d 100 (1999); *Maas v. City of Mountain Home*, 338 Ark. 202, 992 S.W.2d 105 (1999). Waters I does hold that Act 31 is a valid exercise of legislative authority, and Act 31 was never at issue in *Daniel*.

### Res Judicata and Collateral Estoppel

In light of our analysis of the effect of *Daniel* on *Waters I* and in light of the holding in *Waters I*, we agree with the appellants that the trial court erred in denying their motions to dismiss under the doctrine of *res judicata*. Further, we find that the issue of a different taxable period is irrelevant.

---

[1] As stated, we agree with the dissent that where voters are empowered to decide a tax issue, their rights to full disclosure are paramount. However, the dissent ignores the fact that Act 31 empowers the General Assembly, not the voters, to impose a tax. Under the dissent's argument the legislature could never impose a tax directly without a vote of the affected populace. This would make all taxes to imposed suspect and this is not what our constitution requires.

■ The concept of *res judicata* has two facets, issue preclusion and claim preclusion. *Carwell Elevator Co. v. Leathers*, 352 Ark. 381, 101 S.W.3d 211 (2003); *Huffman v. Alderson*, 335 Ark. 411, 983 S.W.2d 899 (1998). Under claim preclusion, a valid and final judgment rendered on the merits by a court of competent jurisdiction bars another action by the plaintiff or his privies against the defendant or his privies on the same claim. *Carwell Elevator, supra.* *Res judicata* bars not only the re-litigation of claims which were actually litigated in the first suit, but also those which could have been litigated. Where a case is based on the same events as the subject matter of a previous lawsuit, *res judicata* will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies. *Id.*

■ Issue preclusion or collateral estoppel bars re-litigation of issues. *Crockett & Brown v. Wilson*, 314 Ark. 578, 864 S.W.2d 244 (1993). In *State v. Thompson*, 343 Ark. 135, 34 S.W.3d 33 (2000), we stated of collateral estoppel:

> When an issue of ultimate fact has once been determined by a valid and final judgment, collateral estoppel precludes re-litigation of that issue between the same parties in any future proceeding. *E.g.,* *Edwards v. State*, 328 Ark. 394, 943 S.W.2d 600; cert. denied, 522 U.S. 950 (1997) (quoting *Schiro v. Farley*, 510 U.S. 222, 232 (1994)). In order to establish collateral estoppel, proof of the following is required: 1) the issue sought to be precluded must be the same as that involved in the prior litigation; 2) the issue must have been actually litigated; 3) the issue must have been determined by a final and valid judgment; and 4) the determination must have been essential to the judgment. *Edwards*, 328 Ark. at 401-02, 943 S.W.2d at 603.

*Thompson* at 139-140.

In the instant case, the trial court ruled that *res judicata* and collateral estoppel did not bar this matter on two grounds: (1) *Daniel* overturned *Waters I*, "as if the prior decision did not exist," and (2) the matter related to a different taxable period. As stated above, we disagree.

■ The constitutional and statutory challenges in *Waters I* were: (1) Act 31 violated the Equal Protection provisions of the U.S. and Arkansas Constitutions because the General Assembly imposed a tax as a matter of law and did not provide for a separate vote of the people; (2) Act 31 was local legislation in violation of

Amendment 14 to the Arkansas Constitution; (3) Act 31 was an improper piece of legislation by reference; (4) the delegation of authority in Act 31 was unconstitutionally vague; and (5) a successful court decision should not be undone by an action of the General Assembly. None of these arguments were successful on appeal and could not be relitigated under the doctrine of *res judicata*. As the trial court found, the same claims that were raised in *Waters I* are raised in the present action.

■■ Further, because the class in an illegal exaction suit is composed of every inhabitant of the area affected by the alleged illegal exaction, every citizen is bound by the judgment. *Worth v. City of Rogers*, 351 Ark. 183, 89 S.W.3d 875 (2002). If an illegal exaction suit were not a bar to another suit, one citizen after another might file suit on behalf of himself or herself until every citizen has sued. *Id.* Regardless of the parties involved, the claims and issues addressed in *Waters I* are barred.

■ Finally, in an attempt to distinguish their claims and avoid *res judicata*, the appellees argue that the issue of different taxable periods gives rise to different causes of action. Under their argument, every time that the tax is collected, a new cause of action would arise. As pointed out by the appellants, this argument is faulty. Even though the use tax is collected annually, Act 31 was enacted only once in 1987. In sum, the tax imposed by Act 31 of 1987, is the same tax collected in subsequent years. The appellees cite no authority, and we know of none, that would allow multiple litigation for each collectable period for a tax that has been determined to be within the authority of the General Assembly to impose.

■■ Under the doctrines of *res judicata* and collateral estoppel, the claims and issues presented in this case are barred from relitigation. The court's decision in *Daniel* did not overrule *Waters I* to the extent discussed above, and we need not address the appellants' remaining arguments. Our decision renders the appellees' cross-appeal moot and it is dismissed. Therefore, we reverse and remand on direct appeal for actions consistent with this opinion.

Reversed on direct appeal; dismissed on cross-appeal.

CORBIN, IMBER, and HANNAH, JJ., dissent.

DONALD L. CORBIN, Justice, dissenting. I dissent because I believe that our holding in *Daniel v. Jones*, 332 Ark. 489,

966 S.W.2d 226 (1998), overruled the decision in *City of Little Rock v. Waters*, 303 Ark. 363, 797 S.W.2d 426 (1990) (*Waters I*), to the extent that *Waters I* refused to recognize that the General Assembly's power to impose a tax does not always reign supreme over the right of the voters to be fully informed.

To understand my position, a recitation of the pertinent facts is necessary. In December 1981, the Pulaski County Quorum Court adopted an ordinance calling for a special election in February 1982, asking the voters to vote for or against the adoption of a 1% countywide sales tax, pursuant to the provisions of Act 991 of 1981, as amended by Act 26 of 1981, First Extraordinary Session. The ordinance did not mention a use tax. The majority of the voters approved the sales tax.

One month later, in March 1982, the Pulaski County Quorum Court passed an ordinance imposing a 1% countywide compensating use tax, which became effective April 1, 1982. The imposition of the use tax was never put before the voters. The use tax was subsequently challenged by taxpayers, and this court ultimately held that the tax was an illegal exaction, because the quorum court lacked the authority to impose such a tax without the approval of a majority of the county's voters. *See Ragan v. Venhaus*, 289 Ark. 266, 711 S.W.2d 467 (1986). In *Ragan*, this court held:

> The appellants are questioning the power of the quorum court to adopt a 1% use tax in Article 2 of Ordinance 82-OR-12 passed on March 23, 1982. *Until that Ordinance was passed there had been no mention of a use tax in any public expression by the court officials.* Before a tax can be enacted, a referendum is required by article 16, section 11, of the Constitution of the State of Arkansas. This Ordinance is an attempt to enact a tax without a referendum.
>
> The citizens are entitled to be informed by plain language about what they are voting, and this court has long insisted on that standard. . . .
>
> To suggest, as appellees do, that references to acts of the legislature in a ballot title were sufficient to inform voters they were not only authorizing a sales tax but also a use tax is like suggesting that mass meetings and city council discussions will sufficiently supply missing necessary information in a ballot title. The voters do not have ready access to the acts of the legislature, and we cannot

presume they know what repealing effects a later act may have on a former act. *Employing the phrase "sales tax" with no mention of "use tax" is at best misleading, even if a referenced act in the ballot title clearly and specifically requires a use tax to be imposed if a sales tax is imposed.*

*Id.* at 270-71, 711 S.W.2d at 469 (emphasis added). The decision in *Ragan* was handed down on June 16, 1986.

Following our decision in *Ragan*, the county officials did not seek the voters' approval of the compensating use tax. Instead, they turned to the General Assembly for help. On June 12, 1987, the governor approved Act 31 of the First Extraordinary Session of 1987, which provided in pertinent part:

> In all counties which adopt a local sales tax under the provisions of Act 991 of 1981 or Act 26 of the First Extraordinary Session of 1981 *or which have, prior to the effective date of this Act, adopted a local sales tax* under the provisions of Act 991 of 1981, or Act 26 of the First Extraordinary Session of 1981, *there is also hereby levied a local compensating use tax.* [Emphasis added.]

Act 31 became effective on September 11, 1987. Since that date, a 1% countywide use tax has been collected from the taxpayers of Pulaski County and distributed by the state officials to the local government entities throughout the county.

Appellee Jamie Waters brought an illegal-exaction challenge to Act 31 and its imposition of a compensating use tax. Among other things, Waters argued that the Act and its tax were invalid because the voters of Pulaski County were never informed that by approving a sales tax, they would be automatically imposing a compensating use tax. The trial court found in favor of the taxpayers and struck down Act 31. The trial court ruled that the voters should have been given the opportunity to vote on the use tax. The government entities appealed, and this court reversed the trial court's order in *Waters I*, 303 Ark. 363, 797 S.W.2d 426. This court held that the General Assembly had plenary power to impose a tax without a vote of the people:

> A state's power to impose a use tax is not conferred. It inheres in the sovereign and is plenary. *See* 68 AM. JUR. 2d *Sales and Use Taxes* § 184 (1973). The right of the State of Arkansas to tax its citizens through the General Assembly was expressly conceded by the framers of the constitution. Ark. Const. art. 2, § 23. The General

Assembly was authorized to delegate its taxing authority and impose restrictions upon any authority delegated to counties. The counties' authority to levy a tax through Act 991 and Act 26 could only be exercised by referendum. *See Ragan v. Venhaus, supra.* However, that restriction imposed upon subordinate governmental entities in no way limited the General Assembly's power to tax. *See also County of Howard v. Rotenberry*, 286 Ark. 29, 688 S.W.2d 937 (1985).

> *The right of citizens to vote on the imposition of sales and use taxes is alleged to exist because of a perceived statutory scheme to give citizens the opportunity to accept or reject such a tax through referendum. It is clear that the legislature intended to limit county governments' authority to tax its residents by requiring an election. However, we do not find any indication that the legislature intended to relinquish or restrict its own power to tax. Where a use tax is imposed by the General Assembly, as with Act 31, there is no fundamental right of citizens to vote on that issue.*

303 Ark. at 368-69, 797 S.W.2d at 429-30 (emphasis added).

The *Waters I* court then went on to reject the taxpayers' argument that they did not know that by voting for a sales tax, they would also be imposing a compensating use tax. Essentially, this court held that the taxpayers' remedy was to vote the legislators who passed Act 31 out of office. This court held:

> Waters suggests that it was not fair to impose, without a vote, the Act 31 tax on residents of some counties while residents of other counties had the opportunity to impose the tax upon themselves through referenda. *Waters also argues, quite persuasively, that it was unfair for the General Assembly to subsequently impose a use tax upon voters in Pulaski County who, in 1982, thought they were adopting only a sales tax.* One must also question whether Pulaski County voters thought that, by imposing only a sales tax, they could restrict the State's power to subsequently impose a use tax more than five years later.
>
> *The tax structure in this state is based upon many different types of taxes, some of which are imposed by direct vote of the citizens and some of which are imposed by the citizens' duly elected representatives. Where those representatives fail to carry out the desire of the people, citizens are afforded the opportunity to voice their concern either directly to those legislators or at the polls when those officials face reelection. Whether a tax is fair should be decided by the legislators of this state who are elected by the people for that purpose.* Here, the members of the General Assembly voted unanimously to impose a use tax, and the governor subsequently signed

Act 31. This court's function, as one of the three branches of government, is confined to the question of the validity and interpretation of the actions taken by the other two branches. We find that the use tax imposed by Act 31 was a valid exercise of authority by the Arkansas Legislature.

*Id.* at 370, 797 S.W.2d at 430-31 (emphasis added).

Justice Newbern was the sole dissenter in *Waters I*. His dissent was based on his belief that where the General Assembly has specifically provided in legislation that particular taxes shall not be imposed except by a vote of the people, the right of voters to be fully informed as to what they are approving or disapproving is paramount to the General Assembly's power to tax. In other words, he believed that although, ordinarily, the General Assembly's power to impose taxes is plenary, where that body chooses to place the power to impose particular taxes in the hands of the voters, the voters must be fully informed of that on which they vote. Justice Newbern wrote:

> In my view, the General Assembly only authorizes the imposition of the tax. It is imposed by a vote of the people who will pay it. Act 31 of the First Extraordinary Session of 1987 permits a vote to be taken using the ballot form which, in accordance with Act 991 of 1981, only apprises the voters that they are voting on a sales tax. The people are not told they will adopt a use tax as well.
>
> . . . .
>
> Allowing voters to be misled in the case of a compensating use tax will lead to allowing them to be hoodwinked on other matters. I would insist on full disclosure in this case and affirm the chancellor's decision.

*Id.* at 373-74, 797 S.W.2d at 432 (Newbern, J., dissenting).

*Waters I* stood untouched for eight years, until this court overruled it in *Daniel*, 332 Ark. 489, 966 S.W.2d 226. At issue in *Daniel* was the taxpayers' claim that the revenues from a countywide 1% sales tax were being used for purposes other than the five specific purposes set out in the ballot. The taxpayers argued that using the tax proceeds for purposes other than those designated on the ballot constituted an illegal exaction.

The government entities in *Daniel* relied on the statutory scheme created by the General Assembly, which provided that the sales tax monies would be collected by the state and then distrib-

uted to the county and its cities on a proportionate basis. They argued that even though the ballot or the levying ordinance did not state that certain monies would go to the cities to use as they saw fit, the voters were put on notice of this fact because the statutes were on the books at the time of the election. This court rejected this argument, and held that the voters' right to be fully informed from the ballot and the levying ordinance was paramount. In so holding, this court rejected the government entities' reliance on the holding in *Waters I*, opting instead to follow the line of cases which included *Ragan*. This court held:

> In *Ragan v. Venhaus*, 289 Ark. 266, 711 S.W.2d 467 (1986), upon which Appellants rely, this court held that "[t]he citizens are entitled to be informed by plain language about what they are voting, and this court has long insisted on that standard." *Id.* at 271, 711 S.W.2d at 469. Mere references to acts of the legislature in a ballot title were insufficient to inform voters about what it was they were voting, as "[t]he *voters do not have ready access to the acts of the legislature,* and we cannot presume they know what repealing effects a later act may have on a former act." *Id.* (emphasis added).

We are thus not persuaded by Appellees' argument that the White County voters could have known, ostensibly from an inspection of the statutory law, that the cities would receive their per capita shares of the tax revenues as set out in section 26-74-313. Appellees rely on this court's holding in *City of Little Rock v. Waters*, 303 Ark. 363, 797 S.W.2d 426 (1990), in support of this argument. At issue in that case was Act 31 of 1987, which provided that in all counties where the voters had approved a sales tax, pursuant to Act 991 of 1981 or Act 26 of the First Extraordinary Session of 1981, a use tax of equal rate would be imposed automatically, without requiring the approval of the voters. This court upheld the imposition of the use tax on the grounds that the General Assembly has the inherent authority to impose a tax and that there is no fundamental right of the citizens to vote on that issue. *Appellees argue that the holding in* Waters *is applicable here, as they contend that in both cases, the complaint is that the voters who approved the sales tax were not informed of the implications of corresponding legislative enactments.*

We decline to follow the reasoning of *Waters*. Instead, we conclude that the holding in *Waters* is incorrect, and we overrule that decision to the extent that it conflicts with our holding today. *We now embrace the reasoning expressed by the dissent in that case, namely that the voters' right to be fully informed of the matter for which they are*

*casting their votes is paramount. In other words, where the General Assembly has established the right of the voters to approve the imposition of a tax, any consideration of the legislature's general power to tax is secondary to the voters' right to full disclosure of the nature of the tax and its proposed purposes.* "[T]he General Assembly only authorizes the imposition of the tax. It is imposed by a vote of the people who will pay it." *Waters*, 303 Ark. at 373, 797 S.W.2d at 432 (Newbern, J., dissenting).

*Daniel*, 332 Ark. at 501-02, 966 S.W.2d at 232-33 (emphasis added).

The majority concludes that our overruling of *Waters I* was limited to the facts presented in *Daniel*. This conclusion ignores the plain language of *Daniel*. We clearly stated that we overruled *Waters I* "to the extent that it conflicts with our holding today." *Id.* at 502, 966 S.W.2d at 233. How did *Waters I* conflict with our holding in *Daniel*? That question is easily answered by reading the next two sentences of the opinion, wherein we specifically embraced Justice Newbern's dissent and then held that "where the General Assembly has established the right of the voters to approve the imposition of a tax, any consideration of the legislature's general power to tax is secondary to the voters' right to full disclosure of the nature of the tax and its proposed purposes." *Id.* Thus, we did not overrule *Waters I* on the issue of equal protection, nor did we disturb that part of the opinion pertaining to local or special legislation. Why? Because the holdings on those issues did not conflict with our holding in *Daniel*. The holding that was in conflict was that which refused to recognize that the voters' right of full disclosure was paramount to the General Assembly's power to tax, because that body had placed the authority to impose that particular tax with the people. It is that holding that *Daniel* overruled in no uncertain terms.

I therefore take issue with the majority's implication that because *Daniel* did not involve Act 31, its overruling of *Waters I* did not affect the earlier case's conclusion that the act was a valid exercise of legislative authority. True, *Daniel* did not involve Act 31; however, in overruling *Waters I*, *Daniel* nullified that part of the decision that upheld Act 31 on the basis of the General Assembly's power to tax being superior to the voters' right to be fully informed. Thus, in my opinion, it is irrelevant that *Daniel* did not involve a challenge to Act 31 itself. What is significant is that it involved a challenge to the imposition of a tax without fully informing the voters of the consequences of their votes.

The bottom line in this case is that, after this court's decision in *Ragan*, 289 Ark. 266, 711 S.W.2d 467, was handed down the

Appellants had the opportunity to remedy the situation by putting the issue of a use tax before the people. For whatever reason, they chose not to do so. Instead, they opted for what I view as the equivalent of an *ex post facto* tax measure. In doing so, I agree with Justice Newbern that they effectively "hoodwinked" the people of Pulaski County. *Waters I*, 303 Ark 363, 374, 797 S.W.2d 426, 432 (Newbern, J., dissenting). Because the voters of Pulaski County were never informed that when they approved the 1% sales tax in 1982, the government officials would go behind their backs and double the amount of taxation, I believe the tax imposed by Act 31 is an illegal exaction. That is precisely what *Daniel* held. By ignoring the import of the decision in *Daniel*, this court is protecting the government to the detriment of the people.

I confess that I am somewhat sympathetic with those who favor keeping the tax in place. I am not so naive that I do not recognize that many government jobs and services depend upon this 1% use tax. However, I am a firm believer in the people's right to be fully informed and I cannot ignore this court's holdings on this issue. I also trust that the voters of this county will, given the opportunity, reimpose this tax if they believe it is necessary.

In sum, while I agree that *Daniel* did not specifically rule on the constitutionality of Act 31, it did overrule the faulty reasoning espoused in *Waters I* that the General Assembly's power to impose a tax is supreme and plenary even where that body has granted such power to the people. Once the General Assembly endowed the people with such authority, their right to be fully informed before any such tax was imposed upon them became the paramount consideration. Any other reading of *Daniel* renders that decision meaningless.

Accordingly, I would affirm the trial court's ruling that *Daniel's* reversal of *Waters I* constituted a change in the law such that *Waters I* is no longer *res judicata* to this illegal-exaction suit. I agree with the majority that under the doctrine of *res judicata*, a valid and final judgment rendered on the merits by a court of competent jurisdiction bars another action by the plaintiff against the defendant on the same claim or cause of action. There are, however, exceptions to this general rule. For example, the Supreme Court has recognized that *res judicata* is generally no defense where between the time of the first judgment and the second there has been an intervening decision or a change in the law creating an altered situation. *See State Farm Mut. Auto. Ins. Co. v. Duel*, 324 U.S. 154 (1945). *See also Commissioner of Internal Revenue v. Sunnen*,

333 U.S. 591 (1948) (holding that a judicial declaration intervening between the two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable); *Restatement (Second) of Judgments* § 28 (1982). Similarly, it has been stated that the doctrine of *res judicata* should not be applied so rigidly as to defeat the ends of justice. *See* 46 AM. JUR. 2d *Judgments* § 522 (1994). Given that the present case involves an ongoing constitutional violation, involving the continued collection of an illegal tax, justice demands that the doctrine of *res judicata* must yield to the more important considerations of justice and fair play. Indeed, it would be absurd for this court to make the determination that the use tax was illegally imposed, but then deprive the taxpayers of any relief from such an illegal tax.

Thus, consistent with the ruling in *Daniel*, I would affirm the trial court's ruling that Act 31 is unconstitutional because the Pulaski County voters were never informed that their approval of a 1% sales tax would result in the automatic imposition of a 1% use tax. That being said, however, I would also affirm the trial court's ruling that relief should be prospective only, as I believe that until this court revisited this case, the government officials were entitled to rely on our previous decisions.

For the foregoing reasons, I respectfully dissent.

IMBER and HANNAH, JJ., join.