The Honorable Dan Greenberg State Representative 55 Fontenay Circle Little Rock, Arkansas 72223-9569
Dear Representative Greenberg:
I am writing in response to your request for an opinion concerning A.C.A. §§ 26-74-220 and 26-74-320, as amended by Act 1273 of 2003, effective January 1, 2008.[1] As you point out, with certain exceptions, Act 1273 amended these Code sections to remove a cap on county sales and use taxes on purchases of more than $2,500.00. See A.C.A. § 26-73-301 (Supp. 2007) (effective January 1, 2008). The $2,500 cap now only applies to sales of a "motor vehicle, aircraft, watercraft, modular home, manufactured home, or mobile home." Id. See also A.C.A. §§ 26-74-220 and -320 (Supp. 2007) (effective January 1, 2008).[2] In prefacing your questions in this regard, you further state that "[p]rior to the effective date of Act 1273, every county ordinance adopted after January 1, 1998 that called for an election to levy a local [sales] tax had to contain a definition of the terms `single transaction.'"
Your specific questions are as follows:
Where the voters of a county have approved the imposition of a local tax subject to the "single transaction" cap, does the legislature have the power to subsequently remove that cap? In other words, does the voters' right to a full explanation on the ballot outweigh the legislature's general power of taxation?
RESPONSE
In my opinion, the answer to your first question is "yes." The answer to your second question is "no," in my opinion, in relation to removal of the local sales tax cap.
Before explaining the basis for these conclusions, I should note that contrary to your statement concerning a definition of "single transaction," counties (and cities) as of 1999 could comply with the definitional requirement by adopting a definition of "single transaction" prior to commencing collection of the tax. See A.C.A. §§26-74-220(b) (counties) and 26-75-222 (cities), as amended byAct 1137 of 1999 (Supp. 2007) (effective until January 1, 2008). Because your questions appear to be premised upon a definition being included in the levying ordinance and ballot, I will assume, arguendo, that there was such a definitional requirement. In my opinion, however, for the reasons explained below, the presence or absence of a definition of "single transaction" in the ordinance or ballot is not determinative of your questions concerning removal of the cap.
Your questions are presumably prompted by the Arkansas Supreme Court's recognition of the principle that where the legislature has authorized the voters to approve the imposition of a tax, the legislature's general taxation power is "secondary" to "the voters' right to be fully informed of the matter for which they are casting their votes. . . ." Daniel v. Jones, 332 Ark. 489, 502, 966 S.W.2d 226 (1998). Daniel was an "illegal exaction" case. See Ark. Const. art. 16, § 13 (authorizing citizens to bring suit "against the enforcement of any illegal exactions whatever.") It involved a challenge to a White County one-percent sales tax that had been approved by the voters. The county levying ordinance and ballot specified five uses for the tax, but did not mention that a portion of the tax would be distributed per capita to cities within the county, and used by the cities for general purposes, pursuant to the state statute authorizing the tax. Daniel, 332 Ark. at 494. The court found this to be an illegal exaction based on Ark. Const. art. 16, § 11, which provides in part that "no moneys arising from a tax levied for any purposes shall be used for any other purpose." Id. at 502. The court rejected the argument that the state statutory scheme was determinative of whether the tax revenues were being used appropriately so as to satisfy art. 16, § 11, and that the voters should have known from the statute that the cities would receive their share. Id. at 500-501. The court instead reasoned:
[W]here the General Assembly has established the right of the voters to approve the imposition of a tax, any consideration of the legislature's general power to tax is secondary to the voters' right to full disclosure of the nature of the tax and its proposed purposes. `[T]he General Assembly only authorizes the imposition of the tax. It is imposed by a vote of the people who will pay it.' Waters,303 Ark. at 373, 797 S.W.2d at 432 [Newbern, J., dissenting).
332 Ark. at 502.
Applying this reasoning, the court concluded:
[T]he . . . voter's right to full disclosure as to how the tax revenues would be spent outweighs any consideration of the General Assembly's authority to establish the particular scheme of distribution of those revenues. . . .Accordingly, any use of the sales tax revenues for purposes other than those designated by the levying ordinance and the ballot is in violation of Article 16, § 11.
Id.
In presenting your question concerning repeal of the sales tax cap, you seem to suggest that this recognized right of the voters to "a full explanation on the ballot" might constrain the legislature's authority to effect the repeal. While an initial reading of Daniel might understandably fuel this line of reasoning, I do not believe it withstands further scrutiny. As an initial matter, Daniel was a so-called "public funds" illegal exaction case based on Ark. Const. art. 16, § 11 (". . . no moneys arising from a tax levied for any purposes shall be used for any other purpose"), the contention being that the sales tax revenues were being misapplied or misspent. See generally Pledger v. Featherlite Precast Corp., 308 Ark. 124, 128, 823 S.W.2d 852
(1992) (recognizing two types of illegal-exaction suits: "public funds" cases and "illegal tax" cases, and noting that a "public funds" case "involves the prevention of a misapplication of public funds or the recovery of funds wrongly paid to a public official.") The Arkansas Supreme Court has explained Daniel as follows:
Like the tax found to be an illegal exaction in Regan v. Venhaus,289 Ark. 266, S.W.2d 467, the illegal expenditure in Daniel was authorized by the General Assembly but imposed by the county government without a vote by the affected citizens. In neither case was the tax nor the purposes for the tax, respectively, fully disclosed to the voters through the ballot. . . . We reaffirm the holding in Daniel, that when a ballot title states that specific funds will be spent in a certain way, the money must then be spent in that manner. [Citations omitted.]
Barclay v. Waters, 357 Ark. 386, 393, 182 S.W.3d 91 (2004), reh. denied, 2004 (emphasis added).
The question you have raised regarding the legislature's authority to remove the $2,500 cap on a local sales tax does not implicate the "public funds" doctrine because there is no issue concerning application of the county sales tax revenues. Instead, your question must be analyzed as a potential "illegal tax" exaction claim. An "illegal tax" claim requires an assertion that the tax itself is illegal or contrary to a constitutional or statutory provision. Ghegan v. Weiss, 338 Ark. 9,991 S.W.2d 536, 539 (1999). See also Pledger, supra, 308 Ark. at 128-29, citing Schuman v. Ouachita County, 218 Ark. 46, 234 S.W.2d 42 (1950) to the effect that "if the taxes complained of are not themselves illegal, a suit for illegal exaction will not lie.") In this regard, I note that the state law removing the $2,500 cap — Act 1273 of 2003 — cannot be challenged as an illegal exaction because it is not a tax-levying statute. Cf. Western Foods, Inc. v. Weiss, 338 Ark. 140, 992 S.W.2d 100
(1999) (rejecting an illegal exaction challenge to Act 536 of 1991, which narrowed the so-called "out-of-county delivery" sales tax exemption.) Rather, a challenge would have to be mounted against the underlying county sales tax, possibly on the theory that because the citizens of the county never voted to remove the "single transaction" cap, the county cannot begin charging the sales tax on transactions over $2,500.
In my opinion, such a claim would likely fail because it essentially is a challenge to the legislature's modification of an exemption to the sales tax. The legislature established the $2,500 cap. See A.C.A. §26-74-220(a)(1) (Supp. 2007) (effective until January 1, 2008) ("Any county general sales or use tax levied pursuant to this subchapter shall be levied and collected only on the first two thousand five hundred dollars ($2,500) of gross receipts, gross proceeds, or sales price from a single transaction. . . .") It then subsequently made the decision to remove the cap. See A.C.A. § 26-74-220(a)(1) (Supp. 2007) (effective January 1, 2008) ("Any county general sales or use tax levied pursuant to this subchapter shall be levied and collected only on the first two thousand five hundred dollars ($2,500) of gross receipts, gross proceeds, or sales price on the sale of a: (A) Motor vehicle; (B) Aircraft; (C) Watercraft; (D) Modular home; (E) Manufactured home; or (G) Mobile home." Except for the specified items, there is no longer an exemption for sales above $2,500. The Arkansas Supreme Court in Western Foods, Inc., supra, rejected the argument that the voters must be given the opportunity to vote on an amendment to a sales tax exemption. Western Foods involved an amendment that narrowed the so-called "out-of-county delivery exemption" under A.C.A. § 26-74-212 to all but a few sales. 338 Ark. at 144. In rejecting the argument that there should have been a vote on the amended tax, the court observed:
The legislature set the parameters of the tax and has the authority to modify the tax at any time. Municipalities have only those taxing powers delegated by the General Assembly. [Citation omitted.] No new tax is being implemented by amending the out-of-county exemption; rather, only the exemption itself is being narrowed.
The General Assembly has the authority to pass a statewide sales tax. It further has the authority to amend the type of exemption found here in a sales tax, without first requiring the municipalities to hold another election to determine if voters agree with the amendment. The General Assembly has delegated the power to levy sales and use taxes to cities and counties but has not delegated the power to determine which transactions are subject to the tax, who collects the tax, when the tax is due, interest and penalties applicable to delinquent taxes, and other such items.
Id. at 148 (emphasis original).
The court also noted that "suits to determine whether the taxpayer transaction falls within an exemption created by statute do not come within the Article 16, § 13, exaction section." Id., citing Pledger, supra. Instead, according to the court, the argument for an election would have to be based upon the sales tax statutes, and those statutes "do not require a subsequent election any time the General Assembly modifies an exemption." Id. at 149-150.
Finally, the court in Western Foods considered and rejected a so-called "ballot title" argument based on Daniel, supra. In responding to the "ballot title" argument that "the full nature of the tax [was] not made know to the electorate when they vote[d] to accept the tax,"338 Ark. at 150, the court noted that the tax in Daniel was challenged as an illegal exaction based on art. 16, § 11. Id. at 150. The court further stated:
Appellants seem to read Daniel to require an ordinance or ballot to include not only the purpose of the tax proceeds and the particular tax being levied, but a description of taxable and exempt transactions, as well. That is not the law.
Id.
In my opinion, similarly, no "ballot title" argument will lie against the legislature's removal of the $2,500 single transaction cap. The court has only recognized this argument in the context of a "public funds" illegal exaction challenge. Nor is there any other clear basis for concluding that the tax is itself illegal based on the legislature's action in removing the cap. The legislature established the cap pursuant to its authority to "set the parameters of the tax," Western Foods, supra; and it retained the power to modify the cap pursuant to such authority, as it did with respect to the out-of-county delivery exemption at issue in Western Foods. Even assuming that the levying ordinance contained a definition of "single transaction" pursuant to statute, the legislature in my opinion did not thereby delegate the authority to set the cap. The court has observed regarding Daniel that "Daniel did not, and could not, overrule the General Assembly's inherent authority to impose a tax directly[,]" and that "nothing in the law prohibits tying the imposition of a tax directly by the General Assembly to an existing tax that was delegated and approved by the affected voters." Barclay v. Waters, supra, 357 Ark. at 393. It would seem to necessarily follow that nothing prohibits the General Assembly from amending an existing tax that was delegated and approved by the voters. If faced with the question, I believe the court would conclude that removal of the cap is a valid exercise of the General Assembly's general taxation power.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] As you note, Act 180 of 2007 established the January 1, 2008, effective date for Act 1273 of 2003. See Acts 2007, No. 180, § 1.
[2] Regarding city sales and use taxes, see A.C.A. §§ 26-75-222 and — 319 (Supp. 2007) (effective January 1, 2008).